228 P.2d 993

**MOORE v. SOUTHWESTERN SASH & DOOR CO.**

No. 5324.

Supreme Court of Arizona.

March 26, 1951.

Robert & Price, Phoenix, for appellant.

Moore & Romley, Charles L. Hardy, Phoenix, for appellee.

UDALL, Chief Justice.

This action arose when R. F. Moore, plaintiff-appellant, a building contractor, suffered the loss of three fingers when he accidentally thrust them in a joiner, a mechanically operated machine for planing lumber, on the premises of the defendant-appellee, Southwestern Sash & Door Company. Whether or not the trial court properly directed a verdict for the defendant at the close of plaintiff's evidence is the sole question presented on this appeal.

On the day of the accident plaintiff drove to the mill of defendant with four heavy timbers to have them milled, i. e., planed and smoothed, the timbers having been theretofore marred on delivery to one of plaintiff's construction jobs. Each of the timbers, according to plaintiff's testimony, weighed 400 or 500 pounds. Upon arrival at the mill yard of defendant, plaintiff was informed by defendant's foreman, Tom Suffolk, that not enough men were available to carry the timbers into the mill. The foreman requested Moore's assistance and plaintiff agreed to help. Excerpts from his testimony relative thereto are as follows:

"Q. What did he (the foreman) say, and what did you (defendant) say? A. He said they were heavy. He didn't think he had men enough to carry them in. 'I believe I will have to get you to help me take them in.' I said 'I will. We need them.' So he went, got some boys and come out.

\* \* \* \* \* \*

"Q. Did he ask you to help mill them? A. Yes, sir.

"Q. Where was that conversation? A. As we were going in, as I recall, that is when he asked me to help mill them and get them out.

"Q. To help mill them and get them out? A. Get them out. I took it for granted to complete the job."

Plaintiff aided in carrying the timbers from his truck to a joiner in the mill and in pushing the timbers over the joiner to mill them. The joiner involved is a mechanically operated machine for planing lumber. It consists of a front table which may be raised or lowered to adjust the depth of the cut, a shaft to which are affixed three blades each twelve inches long, and a back table, fixed in height, which receives the timber after it is pushed over the blades. If it is necessary to plane more than one side of the timber, as in the instant case, the timber must be carried from the back table to the front table for each surface to be separately planed. The shaft rotates at an extremely high rate of speed. At the time of the accident the front table was so adjusted that the blades were raised about one-eighth of an inch above the level of the table.

The accident, which gave rise to the instant suit, occurred after three of the four timbers had been milled and the fourth was nearly completed. Plaintiff, wearing gloves, was assisting in the operations. He testified as follows:

"Q. Did you lift them (the timbers) up and put them on the machine? A. We did.

"Q. Then what did you do? A. I stayed on the opposite end pushing on there until they go through, until we milled all four sides, and when the timber was completed we would take it to the truck.

"Q. Who was present there when you were doing this? A. Well, Tom was there.

"Q. That is Tom Suffolk? A. Tom Suffolk, that is right, all the time, on and off. He would go away, I suppose to look after another job, and he would come back and measure the timber to be sure they were right and he went out, and he kept doing that until the last timber. And the shavings and stuff would pile up on the machine, and the boys, I seen they were neglectful to push this off and I noticed it kept riding over there. It wasn't doing a nice job. I kept raking the shavings off all the time until the last timber. I raked a little bit too far; the shavings were piled near the blade.

"Q. How close to the blade? A. Very close. I kept pushing them.

"Q. Two inches or two feet or— A. Very few inches, I will say. And I kept pushing them off all the time, but this particular time I touched the blade in pushing the shavings off.

"Q. And then what happened? A. I lost three fingers in an instant."

At the close of plaintiff's evidence defendant moved for a directed verdict upon the grounds that plaintiff had failed to prove his allegations of negligence and that it affirmatively appeared from the evidence, including the admissions of the plaintiff himself, that the accident was the result of plaintiff's own fault or carelessness. The motion was granted and from the judgment entered thereon and the denial of plaintiff's motion for new trial this appeal was taken.

The evidence conclusively shows that plaintiff was a building contractor then engaged in the business of constructing homes. He was generally familiar with mechanical saws and machinery used in the trade, and on previous occasions had been in defendant's mill and observed same in operation. He testified, however, that he didn't know how dangerous this particular joiner was. Plaintiff admitted that there was no mechanical defect in the joiner and that the machine itself could not have caused the accident without an affirmative act on his part. He testified that he knew care must be exercised in the use of such machinery because it was dangerous if any part of the human body came in contact therewith. Plaintiff stated that he had observed the planing blade projecting above the surface of the front table and had observed its effect in milling the first three timbers. There was no negligence shown on the part of any co-worker. Plaintiff admitted in a deposition taken

prior to trial that he knew better than to pass his hand over the blade. Furthermore, both at the trial and in his deposition he admitted that no one directed him to do so and that the injury was caused by his own carelessness.

The gist of plaintiff's argument on appeal is that he did not realize the danger involved in using this joiner and that since he was an invitee on defendant's premises defendant was negligent in requesting and allowing him to aid in milling the timbers and in not warning him of the danger.

There is little merit to plaintiff's contentions for his allegations of negligence on the part of defendant are not borne out by the evidence. We necessarily view the evidence in the light most favorable to plaintiff, Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201, but even in so doing the conclusion seems inescapable that the sole cause of plaintiff's injury was his own negligence.

The law is well settled that "There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." 38 Am.Jur., Negligence, Sec. 97. In 2 Torts, A.L.I., section 343, the three elements necessary to establish liability of an owner or possessor of land to a business invitee are succinctly stated. Plaintiff must prove: (a) that the possessor knew, or by the exercise of reasonable care could have discovered, the condition which, if known to him, he should have realized as involving an unreasonable risk to plaintiff, and (b) that defendant had no reason to believe that plaintiff would discover the condition or realize the risk involved, and (c) that defendant invited or permitted plaintiff to enter or remain upon the land without exercising reasonable care, (1) to make the condition reasonably safe, or (2) to give warning adequate to enable him to avoid the harm. In the instant case plaintiff failed to sustain the burden of proof in establishing these elements. No duty on the part of defendant was shown to make the "condition reasonably safe" or "to give warning". Defendant was not bound to warn plaintiff of a peril and risk, which was open and obvious, and was or should have been appreciated by him as a man of ordinary prudence.

An owner of premises is not an insurer of invitees on the premises, nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. Foster v. A. P. Jacobs & Associates, 85 Cal.App.2d 746, 193 P.2d 971; Long Const. Co. v. Fournier, 190 Okl. 361, 123 P.2d 689. Here, the danger was either known to plaintiff, or should have been known to him, both because of his past knowledge and experience and because the peril was patent and obvious. The trial court properly held, as a matter of law,

that a man of ordinary prudence should have appreciated the danger and hence plaintiff could not recover.

Plaintiff, by inverse reasoning, also argues that the defenses of contributory negligence and assumption of risk should have been left to the jury, hence since defendant was entitled to have these issues submitted to the jury plaintiff was likewise entitled to have the issue of defendant's negligence so determined. While the Constitution of Arizona, art. 18, sec. 5, provides that the defenses of contributory negligence and assumption of risk shall at all times be left to the jury, nevertheless it is the settled rule in Arizona that these defenses are not to be submitted to the jury unless it is first shown that there was negligence on the part of the defendant. Campbell v. English, 56 Ariz. 549, 110 P.2d 219; Texas-Arizona Motor Freight v. Mayo, 70 Ariz. 323, 220 P.2d 227. Here no such negligence was shown.

Plaintiff also complains that it was error to permit counsel for defendant, over plaintiff's objection, to ask plaintiff, "It was your fault, wasn't it?" There is no merit to this contention. Counsel was merely seeking to and did elicit an admission of a party opponent. See 4 Wigmore on Evidence, sec. 1048 et seq.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.