13 P.3d 763

**Denise ENGLERT, surviving spouse of Dwight Englert, individually and on behalf of all those entitled to recover for the death of Dwight Englert; and Jody Englert, Plaintiffs/Appellees,**

v.

**CARONDELET HEALTH NETWORK, an Arizona corporation, dba Carondelet St. Joseph's Hospital, Defendant/Appellant/Appellee,**

and

**Emergency Room Associates, Ltd., an Arizona corporation; Randall L. Bennett, M.D., and Jane Doe Bennett, husband and wife, Defendants/Appellants.**

No. 2 CA–CV 00–0017.

Court of Appeals of Arizona, Division 2, Department B.

Nov. 28, 2000.

Review Denied March 20, 2001.

Piccarreta & Davis, P.C., By Barry M. Davis and JoJene E. Mills, Tucson, Attorneys for Plaintiff/Appellee Denise Englert.

Christian, Mariano & Coomer, P.L.C., By Nancy M. Coomer, Tucson, Attorneys for Plaintiff/Appellee Jody Englert.

Bury, Moeller, Humphrey & O'Meara, By Marshall Humphrey III and Roger W. Frazier, Tucson, Attorneys for Defendant/Appellant/Appellee Carondelet Health Network.

Sanders & Parks, P.C., By Frank A. Parks, Renee M. Coury and Karl A. Fazio, Phoenix, Attorneys for Defendants/Appellants Emergency Room Associates, Ltd. and Bennett.

## OPINION

HOWARD, Presiding Judge.

¶ 1 In this medical malpractice wrongful death case, appellants Dr. Randall Bennett[1] and Carondelet Health Network challenge the trial court's post-verdict orders granting appellee Denise Englert a new trial.[2] Dr. Bennett also challenges a pretrial, interlocutory order precluding him from arguing that a Carondelet nurse (Nurse Carr) was comparatively negligent. Because the trial court did not abuse its discretion, we affirm.

## BACKGROUND

¶ 2 Dwight Englert and his wife, Denise, went to Carondelet's hospital's emergency room around midnight because Dwight felt pressure in his chest and pain radiating to his neck and ear. Dr. Bennett met with Dwight and Denise, examined Dwight, conducted tests, and diagnosed him as having esophagitis. Dr. Bennett sent Dwight home but prescribed Mylanta and instructed Dwight and Denise to return to the hospital if the pain recurred.

¶ 3 Approximately an hour and a half later, Denise called Nurse Carr at the hospital because Dwight's symptoms had returned. The nurse spoke to Dr. Bennett, who instructed her to tell Denise that Dwight should take another dose of Mylanta and, if his pain did not subside, that Dwight should return to the hospital. Dwight took a second dose of Mylanta and he and Denise went to bed. When Denise awoke, Dwight was unresponsive. After being rushed to the hospital, Dwight died that morning from a "sudden cardiac event" caused by "atherosclerotic cardiovascular disease."

¶ 4 Denise sued Dr. Bennett and Carondelet for Dwight's wrongful death from their alleged medical malpractice. A jury awarded her $280,000 in damages and apportioned ten percent of the fault to Dr. Bennett, seventy-five percent to the Englerts, and fifteen percent to a non-party physician. Denise then filed a motion for new trial, claiming she had been denied a fair trial because, over her objection, the court had allowed Dr. Bennett to argue an undisclosed affirmative defense in his closing argument: that the Englerts were comparatively at fault for withholding from Dr. Bennett information about Dwight's medical history. The trial court granted the motion for new trial, finding that Dr. Bennett's withholding of medical history theory was not disclosed before trial and that the court's erroneous decision to permit Dr. Bennett to argue that theory to the jury had affected Denise's rights. After Carondelet filed a motion for clarification, in which Dr. Bennett joined, the trial court specifically ordered that the new trial address all contested issues of liability and damages. This appeal followed.

---

1. Dr. Bennett is an employee of appellant Emergency Room Associates, Ltd.; we refer to both parties collectively as "Dr. Bennett."

2. Appellee Jody Englert is one of decedent Dwight Englert's surviving children. Although she is not the statutory plaintiff in this case, *see*

A.R.S. § 12–612(A), she is a party to the action on the issue of damages and where the statutory beneficiaries' interests conflict. *See Williams v. Superior Court,* 169 Ariz. 468, 469–70, 820 P.2d 332, 333–34 (App.1991). On appeal, she has joined in appellee Denise Englert's arguments.

## NEW TRIAL

¶ 5 Dr. Bennett challenges, on several grounds, the trial court's decision to grant a new trial. The trial court has the discretion to grant a new trial when it has made a legal error or error in admitting evidence that materially affects a party's rights. Ariz.R.Civ.P. 59(a)(6), 16 A.R.S. Absent an abuse of that discretion, we will not interfere with a trial court's decision to grant a new trial on this basis. *MacConnell v. Maricopa County Med. Society,* 150 Ariz. 505, 506, 724 P.2d 591, 592 (App.1986). "We review an order granting a new trial under a more liberal standard than an order denying one...." *State Farm Fire & Cas. Co. v. Brown,* 183 Ariz. 518, 521, 905 P.2d 527, 530 (App.1995).

¶ 6 The trial court found that it should have sustained Denise's objection to Dr. Bennett's withholding of medical history theory because that affirmative defense had not been disclosed before trial. A party is required to timely disclose its legal defenses and the factual bases for them, a "fair description" of each witness's expected testimony, and "the substance of the facts and opinions" of each expert's expected testimony. Ariz.R.Civ.P. 26.1(a)(1), (2), (3), and (6). If a party fails to do so before trial, it is not permitted to use that information at trial absent specific extenuating circumstances. Ariz.R.Civ.P. 37(c)(3).

¶ 7 Although Dr. Bennett insists that he had disclosed the affirmative defense before trial, the record supports the trial court's finding that he had not. Dr. Bennett had previously alleged the Englerts' comparative fault, but on entirely different grounds. He had not included his theory of comparative fault based on the Englerts' withholding of Dwight's medical history in his disclosure statements or the joint pretrial statement. Although we agree with Dr. Bennett that Rule 26.1 does not require "detailed 'scripting' of expected testimony," *Bryan v. Riddel,* 178 Ariz. 472, 476 n. 5, 875 P.2d 131, 135 n. 5 (1994), his pretrial disclosures did not provide Denise with any notice that he would be arguing this theory of comparative fault. *See Clark Equip. Co. v. Arizona Property & Cas. Ins. Guar. Fund,* 189 Ariz. 433, 440, 943 P.2d 793, 800 (App.1997) ("The purpose of disclosure is ... to give each party adequate notice of what arguments will be made and what evidence will be presented at trial."). Because the trial court's finding is supported by the record and the undisclosed affirmative defense should have been precluded, the trial court did not abuse its discretion in ordering a new trial.

¶ 8 Dr. Bennett contends, however, that Denise waived her claim for a new trial because she did not object to the introduction of evidence about Dwight's medical history. But Denise contends she did not object to the evidence because she believed Dr. Bennett was introducing it to prove the nonparty physician's fault. Had Dr. Bennett complied with the disclosure rules, he could have avoided any such misunderstanding. And, the issue is not whether the evidence was admissible, but whether Dr. Bennett should have been allowed to argue that it supported an undisclosed theory of comparative fault. Failure to object to the medical history evidence, therefore, was not a waiver of the claim for a new trial based on the undisclosed affirmative defense.

¶ 9 Dr. Bennett also contends Denise waived her claim for a new trial because her objection, made before closing argument, concerned only the admission of an exhibit, not the undisclosed affirmative defense. The trial court implicitly found that Denise's objection included an objection to the new affirmative defense; the court specifically stated in its minute entry granting Denise a new trial that "this Court should have sustained Plaintiff's objection to the theory being argued at closing." Moreover, even if Denise had not objected at trial to the undisclosed affirmative defense, her failure to object would not require us to overturn the trial court's grant of a new trial.

> [T]hough a party risks forfeiting a potential ground for appeal by withholding prompt objection to an opponent's misconduct, he does not forfeit the right to assert such misconduct as a basis for sustaining the trial court's new trial order if the trial court finds the impropriety sufficient to

warrant a new trial despite the absence of a prompt objection.

*Liberatore v. Thompson*, 157 Ariz. 612, 620, 760 P.2d 612, 620 (App.1988); *see also Sadler v. Arizona Flour Mills Co.*, 58 Ariz. 486, 489–90, 121 P.2d 412, 413 (1942).

 ¶ 10 Dr. Bennett also argues that the trial court should not have ordered a new trial because, even if his affirmative defense was not timely disclosed, he was justified in presenting it to rebut Denise's previously undisclosed theory that he had failed to conduct an adequate investigation into Dwight's history. Denise contends that, at trial, she did not expand beyond her previously disclosed theories that Dr. Bennett was negligent because his diagnosis was based on incorrect assumptions about Dwight's complaints and conduct on the night Dr. Bennett met with him and because Dr. Bennett made insufficient inquiry into Dwight's condition when Denise called the hospital. We need not resolve this dispute, however, because, even if Dr. Bennett's allegation is correct, he has not cited any authority supporting the use of an undisclosed affirmative defense to rebut an opponent's undisclosed theory of liability. Nor do we believe the trial court abused its discretion in determining that it should not have been permitted here.

¶ 11 Dr. Bennett could have introduced evidence to rebut Denise's allegedly undisclosed theory of negligence. *See Pool v. Superior Court*, 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984) (where party introduces "improper or irrelevant evidence or argument," other party "may have right to retaliate ... with comments or evidence *on the same subject*") (emphasis added). But such rebuttal evidence could only respond to and undermine the allegedly improper theory of liability. *See id.* In contrast, by introducing an undisclosed affirmative defense, Dr. Bennett improperly added issues to the litigation; he attempted to reduce his liability on entirely new grounds. See A.R.S. § 12–2505(A) (comparative negligence reduces damages proportionate to degree of fault); *Law v. Superior Court*, 157 Ariz. 147, 154, 755 P.2d 1135, 1142 (1988) (same); *see generally Moore v. Southwestern Sash & Door Co.*, 71 Ariz. 418, 423, 228 P.2d 993, 996 (1951) (con-

tributory negligence not submitted to jury unless defendant's negligence first shown). And, because Dwight and Denise are laypeople, Dr. Bennett's new theory required a different standard of care than that applicable to Dr. Bennett, a professional, under Denise's medical malpractice theory. *See Lasley v. Shrake's Country Club Pharmacy, Inc.*, 179 Ariz. 583, 586, 880 P.2d 1129, 1132 (App.1994), *quoting Bell v. Maricopa Med. Ctr.*, 157 Ariz. 192, 194, 755 P.2d 1180, 1182 (App.1988) (ordinary standard of care is that of "reasonably prudent person under the circumstances"; higher standard of care for health care providers based on " 'usual conduct of other members of the defendant's profession in similar circumstances' "). By adding new issues, Dr. Bennett went beyond rebuttal on the same subject. *See Pool.*

¶ 12 Dr. Bennett could have objected if Denise had introduced a new theory, an option he claims he tactically and intentionally rejected, or could have requested the court's permission to introduce his new theory in rebuttal. Because he chose to go forward on his own, without court approval, he bore the risk that the court might later determine that there had been a miscarriage of justice. Parties should avoid such tactics. Although we do not adopt a rule that a trial court may never permit, or approve of after-the-fact, the retaliatory use of an undisclosed theory, Denise's alleged failure to disclose a theory of liability does not require that we find the trial court abused its discretion in granting a new trial here.

 ¶ 13 Next, Dr. Bennett seems to claim that a new trial was inappropriate because, even though he may have violated the disclosure rules, the trial court could not have prevented him from arguing the undisclosed affirmative defense to the jury because article XVIII, § 5, of the Arizona Constitution mandates that "[t]he defense of contributory negligence ... shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." This issue was not raised below, and we generally do not consider issues, even constitutional issues, raised for the first time on appeal. *K.B. v. State Farm Fire & Cas. Co.*, 189 Ariz. 263, 268, 941 P.2d 1288, 1293 (App.

1997). We decline to address it because we perceive no issue of statewide importance, *see Larsen v. Nissan Motor Corp. in U.S.A.,* 194 Ariz. 142, ¶ 12, 978 P.2d 119, ¶ 12 (App. 1998), and no fundamental error. *See Williams v. Thude,* 188 Ariz. 257, 260, 934 P.2d 1349, 1352 (1997) ("[T]he 'fundamental error' doctrine should be used sparingly, if at all, in civil cases."); *Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 134, 717 P.2d 434, 438 (1986) ("[Article] 18, § 5 did not elevate the defense of contributory negligence into the pantheon of constitutional rights.").

¶ 14 Because we conclude that the trial court did not abuse its discretion in granting a new trial, we next consider Dr. Bennett's and Carondelet's arguments that the trial court abused its discretion when it found that the liability and damage issues were "inextricably intertwined" and ordered a new trial on all contested issues of liability and damages. We review the trial court's decision to grant a new trial on all issues for an abuse of discretion. *See Styles v. Ceranski,* 185 Ariz. 448, 451, 916 P.2d 1164, 1167 (App.1996); *Cole v. Gerhart,* 5 Ariz.App. 24, 28, 423 P.2d 100, 104 (1967); *In re Thompson's Estate,* 1 Ariz.App. 18, 23, 398 P.2d 926, 931 (1965). "An 'abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Torres v. North American Van Lines, Inc.,* 135 Ariz. 35, 40, 658 P.2d 835, 840 (App.1982). Even if we would have acted differently under the same circumstances, we nevertheless will affirm the trial court's decision if it did not "exceed[ ] the bounds of reason by performing the challenged act." *Toy v. Katz,* 192 Ariz. 73, 83, 961 P.2d 1021, 1031 (App.1997); *see also Quigley v. Tucson City Court,* 132 Ariz. 35, 37, 643 P.2d 738, 740 (App.1982) ("A difference in judicial opinion is not synonymous with 'abuse of discretion.' ").

¶ 15 A new trial should only be on "the question or questions with respect to which the verdict or decision is found erroneous, if separable." Ariz.R.Civ.P. 59(h). But "[p]artial new trials are not recommended because they create much opportunity for confusion and injustice." *Styles,* 185 Ariz. at 451, 916 P.2d at 1167. A partial trial should be granted when the issues are not inextricably intertwined and can be separated without prejudice to the parties. *See Saide v. Stanton,* 135 Ariz. 76, 79–80, 659 P.2d 35, 38–39 (1983); *Styles,* 185 Ariz. at 451, 916 P.2d at 1167; *see also Anderson v. Muniz,* 21 Ariz. App. 25, 28, 515 P.2d 52, 55 (1973). Any doubt should be resolved in favor of a trial on all the issues. *See Styles,* 185 Ariz. at 451, 916 P.2d at 1167; *In re Thompson's Estate,* 1 Ariz.App. at 23, 398 P.2d at 931.

¶ 16 Dr. Bennett and Carondelet contend the new trial should be limited to liability and apportionment of fault issues because the error necessitating a new trial only related to those issues and the damage issue was not inextricably intertwined with the liability/apportionment issues. On the one hand, as Denise conceded at oral argument, the issues of liability and damages in a wrongful death action are generally distinct because recoverable damages are not based on the negligent act but, rather, on the survivors' injuries "resulting from the [decedent's] death." A.R.S. § 12–613; *see Mullen v. Posada del Sol Health Care Ctr.,* 169 Ariz. 399, 400, 819 P.2d 985, 986 (App.1991).

[18] ¶ 17 On the other hand,

[w]here there is conflicting evidence on liability, a new trial on all issues is desirable.... [I]n comparative fault cases there is an interrelationship between fault and damages apparent on the face of the instructions. The issues of liability and damages are so interwoven and blended that "it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of damages to be eventually awarded to the plaintiff."

*Courtney v. City of Kansas City,* 775 S.W.2d 269, 273 (Mo.App.1989) (citations omitted), *quoting Phillips v. Lively,* 708 S.W.2d 369, 373 (Mo.App.1986). Here, the jury submitted a question to the trial court about whether the damage award would be decreased by both Denise and Dwight's fault or just Denise's fault. This suggests it may have considered "the effect of its determination of percentages of fault in terms of damages to be

eventually awarded." *Phillips*, 708 S.W.2d at 373. This would militate in favor of a new trial on all issues.

¶ 18 In addition, the trial court was in a better position than this court to assess the effect of Dr. Bennett's misconduct on the jury. *See Taylor v. Southern Pac. Transp. Co.*, 130 Ariz. 516, 521, 637 P.2d 726, 731 (1981); *Miller v. Palmer*, 143 Ariz. 84, 88, 691 P.2d 1112, 1116 (App.1984). And its decision to grant a new trial on all issues was discretionary. *See Styles*, 185 Ariz. at 451, 916 P.2d at 1167. In *In re Thompson's Estate*, we upheld the trial court's decision to order a new trial on all the issues, noting that "[o]ur court has never held that the granting of a new trial as to all issues, rather than as to particular issues, is erroneous." 1 Ariz.App. at 23, 398 P.2d at 931. Although we decided that case thirty-five years ago, we are unaware of and neither Dr. Bennett nor Carondelet has cited a subsequent Arizona case finding an abuse of discretion when the trial court ordered a new trial on all issues.

¶ 19 The majority of cases on which Dr. Bennett and Carondelet rely, whether from Arizona or other jurisdictions, are distinguishable because they either involve an appellate court granting a partial new trial after deciding in the first instance that a new trial was required[3]. or decisions affirming a trial court's order granting a partial new trial.[4] Only one case, *Winn v. Lafayette Town House*, 839 F.2d 835 (1st Cir.1988), merits discussion. In that case, the defendant requested a partial new trial on the issue of liability because of the plaintiff's misconduct. *Id.* at 835–36. The trial court denied that request, stating that "once the Court allows a new jury to reassess the comparative fault of the parties, the Court must also allow that jury to reevaluate Plaintiff's damages in light of its findings on the issue of liability." *Id.* at 836. The First

Circuit Court of Appeals concluded that the trial court had abused its discretion, finding that the damage issue did not need to be retried unless it was independently flawed. *Id.* at 836–37. The court noted that the plaintiff's misconduct necessitated the new trial and that it should not be permitted to seek to better its position "[a]bsent the most unusual circumstances." *Id.* at 837. In contrast, Dr. Bennett's actions necessitated the new trial and he is the party seeking to limit the scope of the new trial. *See Southern Pac. Co. v. Gastelum*, 36 Ariz. 106, 125, 283 P. 719, 725 (1929) (when issues interwoven, "[t]he court should never permit a party to an action to select for retrial the issues decided against him and upon the rehearing treat those decided in his favor as settled"). *Winn*, therefore, is not applicable here.

¶ 20 Although this issue is a close one, as evidenced by the dissent, we find nothing to suggest that the trial court's decision "exceeded the bounds of reason," *Toy*, 192 Ariz. at 83, 961 P.2d at 1031, especially in light of the jury question that suggests it may have considered the effect of its percentage of fault allocation on total damages actually awarded. Nor can we say that "no reasonable trial judge" would have so ruled or that the trial judge acted for "untenable reasons." *Torres*, 135 Ariz. at 40–41, 658 P.2d at 840–41. Therefore, we defer to the trial court's exercise of its discretion and uphold the order granting a new trial on all contested issues.

¶ 21 In a related argument, Carondelet contends the trial court lacked the authority to order that the new trial cover all issues because Denise did not challenge the damage award in her motion for new trial. Carondelet appears to argue that, after it filed its motion for clarification, in which Dr. Bennett joined, the trial court improperly used Rule 59(g), Ariz.R.Civ.P., to extend the

3. *La Plante v. American Honda Motor Co.*, 27 F.3d 731, 738 (1st Cir.1994); *Allen v. Chance Mfg. Co.*, 873 F.2d 465, 473–74 (1st Cir.1989); *Sturm, Ruger & Co. v. Day*, 615 P.2d 621, 623–24 (Alaska 1980); *Saide*, 135 Ariz. at 79–80, 659 P.2d at 38–39; *Hirsh v. Manley*, 81 Ariz. 94, 104, 300 P.2d 588, 594 (1956); *Furek v. University of Delaware*, 594 A.2d 506, 524 (Del.1991); *Hierta v. General Motors Corp.*, 148 Mich.App. 796, 385 N.W.2d 690, 691–92 (1986); *Bauman v. Craw-*

ford, 104 Wash.2d 241, 704 P.2d 1181, 1186 (1985); *Block v. Gomez*, 201 Wis.2d 795, 549 N.W.2d 783, 789–90 (App.1996).

4. *Martinez v. Schneider Enterprises, Inc.*, 178 Ariz. 346, 349–50, 873 P.2d 684, 687–88 (App. 1994); *Fye v. Kennedy*, 991 S.W.2d 754, 760–62 (Tenn.App.1998).

scope of the new trial. But Rule 59(g) is not implicated here. That subsection authorizes, among other things, a trial court to grant a motion for new trial for a reason not stated in the motion, after it gives the parties notice and an opportunity to be heard. The trial court, however, did not state a new ground for its decision; it clarified the scope of its ruling. *Compare* Ariz.R.Civ.P. 59(a) *with* (b) *and* (h).

¶ 22 In her motion for new trial, Denise requested a new trial without limitation as to the issues to be decided and argued that the undisclosed theory of comparative fault had affected the verdict, including the damage award. Dr. Bennett and Carondelet did not request the new trial be limited to liability in their responses. In its initial order, the trial court granted a new trial, without stating whether the new trial was limited to certain issues. That Carondelet and Dr. Bennett later claimed the new trial should be limited to liability issues does not alter the fact that the original order for new trial was without limitation. And, although Rule 59(h), Ariz. R.Civ.P., provides that a new trial shall only cover "the question or questions with respect to which the verdict or decision is found erroneous, if separable," the parties had not asked the court to determine whether liability and damages were "separable" until after the trial court granted the motion for new trial and Carondelet and Dr. Bennett sought clarification of that order. The trial court, therefore, had the authority to consider this issue when it was presented.

¶ 23 We conclude that the trial court did not abuse its discretion in granting a new trial and ordering that the new trial cover all contested issues of liability and damages.

### NURSE CARR

¶ 24 Dr. Bennett contends that, if we affirm the trial court's orders granting a new trial, we should review the trial court's pretrial interlocutory order granting Carondelet's motion in limine, in which Carondelet sought to preclude Dr. Bennett from raising as an issue at trial Nurse Carr's comparative fault. Carondelet's motion in limine alleged that Dr. Bennett's theory of Nurse Carr's comparative fault and his standard of care

expert on the issue were disclosed after the deadline for disclosure of expert witnesses. We need not consider the propriety of the trial court's ruling on the motion in limine because, based on the unusual scheduling situation present here, the trial court will have an opportunity to reconsider its ruling before the new trial.

¶ 25 After ruling on the motion for clarification on January 4, 2000, the trial court, at the parties' request, scheduled the new trial for May 1, 2001. The parties requested the lengthy delay because Dr. Bennett stated he intended to appeal and additional discovery would be needed if this court upheld the trial court's granting of a new trial. Because we cannot foresee whether the trial court will establish new disclosure deadlines, including a new deadline for the disclosure of expert witnesses, or reconsider its disclosure sanction in light of the fact that the parties will have time to conduct discovery on the theory that Nurse Carr was comparatively at fault, *see* Rule 37(c), Ariz.R.Civ.P., *and* Rule 1(D) and (E), Ariz. Unif. R.P. Med. Malpractice, 17B A.R.S., we need not address the trial court's ruling on this pretrial discovery issue. *See Vincelette v. Metropolitan Life Ins. Co.,* 291 Mont. 261, 968 P.2d 275, ¶ 33 (1998) ("Because we have remanded this case for a new trial, we presume that a new discovery schedule will be established and that the parties will have the opportunity to complete any discovery they consider necessary. Therefore, we deem it unnecessary to decide the discovery issues presented on appeal.").

### CONCLUSION

¶ 26 The trial court's orders granting a new trial on all contested issues of liability and damages are affirmed.

CONCURRING: M. JAN FLÓREZ, Judge.

ESPINOSA, Chief Judge, dissenting in part.

¶ 27 I concur with the majority on all issues except the propriety of the trial court's granting of a new trial on the issue of damages. Although, as the majority correctly notes, this is a matter within the trial court's

discretion, *Styles,* I would find that discretion exceeded here because the liability and damages issues were in no way "inextricably intertwined." A partial retrial is appropriate when the issues are not interwoven and the possibility of prejudice is slight. *See Styles,* 185 Ariz. at 451–52, 916 P.2d at 1167–68; *Martinez v. Schneider Enters.,* 178 Ariz. 346, 349, 873 P.2d 684, 687 (App.1994). As the majority concedes, "the issues of liability and damages in a wrongful death action are generally distinct because recoverable damages are not based on the negligent act, but, rather, on the survivors' injuries 'resulting from the [decedent's] death.'" *Supra,* at ¶ 16. Such is this case. Carondelet's contention that the evidence of damages was separate and distinct from the evidence of liability and the comparative fault of the parties is borne out by the record. It is unfair to nevertheless require Carondelet to retry a valid and untainted damages verdict, particularly when it was not the party responsible for the conduct necessitating a new trial. *See Winn.*

¶ 28 Moreover, in her new trial motion, Englert asserted error only as to liability issues. She was therefore not entitled to relief from the damages judgment. *See* Ariz. R.Civ.P. 59(h) (if granted, new trial should be "only" on question "with respect to which the verdict or decision is found erroneous"). I would affirm the trial court's judgment only to the extent of granting Englert a new trial on the liability issues she contested.