NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL LYNN COOK, *Plaintiff/Appellant,*

*v.*

CHARLES L. RYAN, et al., *Defendants/Appellees.*

No. 1 CA-CV 19-0234
FILED 5-5-2020

Appeal from the Superior Court in Maricopa County
No. LC2018-000335-001 DT
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Michael Lynn Cook, Florence
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael E. Gottfried, Daniel P. Schaack
*Counsel for Defendant/Appellee Charles L. Ryan*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1          Appellant Michael Lynn Cook ("Cook") challenges the superior court's denial of relief in a special action brought against Appellees Charles L. Ryan, et. al. ("Appellees") stemming from Cook's complaints arising from multiple prison disciplinary proceedings. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2          Cook is an inmate incarcerated at the Arizona Department of Corrections ("DOC"). On December 13, 2017, Cook was charged with threatening and intimidation in disciplinary case number 17-L23-1182.[1] On December 18, 2017, Cook was accused of participating in a riot, which led to DOC filing a recommendation for maximum custody placement. Shortly after on December 25, 2017, Cook was charged with possession of a weapon, in case number 17-LO9-0113. In that case, a corrections officer alleged that during a search of Cook's property, a weapon was found in Cook's jacket pocket.

¶3          On January 5, 2018, a disciplinary hearing was held for case number 17-LO9-0113. Cook was found guilty of the charges, which resulted in a loss of 180 earned release credits, among other penalties. Cook was also approved for maximum custody placement due to his alleged riot participation.

¶4          On February 21, 2018, Cook was accused of tearing out eighty-one pages of a library book in case number 18-LO9-0001. A hearing was held on March 29, 2018, and Cook was found guilty of the charges, resulting in his loss of sixty earned release credits along with other penalties.

---

[1]      Based on the information available in the record, as well as Cook's arguments in his briefs, it is unclear what resulted from these charges.

¶5        On May 3, 2018, Cook was directed by officers to move to a new housing location, and he allegedly refused to obey multiple verbal directives in case number 18-A21-0349.  A hearing was held on May 18, 2018, and Cook was found guilty of disobeying verbal orders, and the penalties included a loss of thirty earned release credits.

¶6        On May 24, 2018, Cook was placed on a dinner restriction and given a cold dinner on a paper tray.  As an officer handed Cook his dinner through the door's food trap, Cook allegedly held the officer's arm in the food trap to prevent the officer from closing it in protest to his dinner restriction and to ensure a sergeant came to address the situation.  The officer claimed that Cook attempted to assault him.  The officer called in for assistance, and after responding sergeants arrived, Cook was allegedly given multiple directives to submit to restraints, and he refused.  Cook was charged with disorderly conduct, and a hearing was held on June 15, 2018, in case number 18-A21-0364.  Cook was found guilty, which resulted in a penalty of the loss of thirty earned release credits.

¶7        Cook filed internal appeals in case numbers 18-LO9-0001, 18-A21-0349, and 18-A21-0364, but they were denied.  Cook filed a complaint with the superior court.  The court accepted special action jurisdiction over his case, but ultimately denied relief in a minute entry dated March 21, 2019.  Cook filed a Notice of Appeal on April 3.  This court noted that the superior court's March 21, 2019 minute entry lacked Arizona Rule of Civil Procedure ("Rule") 54(c) certification, and we suspended the appeal pending the superior court entering an appealable order.  The superior court subsequently filed an order with the required Rule 54(c) language on June 6, 2019.[2]

¶8        We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1) and 12-2101(A)(1).

---

[2]        Appellees moved to dismiss the appeal, arguing Cook failed to file another Notice of Appeal following the superior court's June 6, 2019 order.  This court denied the motion to dismiss and found the appeal was automatically reinstated following the June 6, 2019 order. *See Craig v. Craig*, 227 Ariz. 105, 107, ¶ 13 (2011) (stating a premature notice of appeal does not need to be dismissed "if no decision of the court could change and the only remaining task is merely ministerial" (quoting *Smith v. Ariz. Citizens Clean Elections Comm'n*, 212 Ariz. 407, 415, ¶ 37 (2006)).

**DISCUSSION**

¶9 A superior court may exercise its discretion to consider a complaint arising from inmate disciplinary decisions as a special action. *Rose v. Dep't of Corr.*, 167 Ariz. 116, 121 (App. 1991). To prevail on a special action complaint, a plaintiff must demonstrate:

> (1) "the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion";
>
> (2) "the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority"; or
>
> (3) "a determination was arbitrary and capricious or an abuse of discretion."

Ariz. R.P. Spec. Act. 3. We conduct a bifurcated review on appeal from a superior court ruling on a special action, determining first whether the superior court accepted jurisdiction. *Stapert v. Ariz. Bd. of Psychologist Exam'rs*, 210 Ariz. 177, 182, ¶ 22 (App. 2005). If it did, we review the merits of the decision. *Id.* The superior court did accept jurisdiction in this case; accordingly, we review its decision on the merits for an abuse of discretion but review questions of law *de novo*. *Ottaway v. Smith*, 210 Ariz. 490, 492, ¶ 5 (App. 2005).

¶10 Cook argues that he was denied due process throughout his disciplinary proceedings for case numbers 17-L23-1182, 17-LO9-0113, 18-LO9-0001, 18-A21-0349, and 18-A21-0364, as well as the maximum custody placement proceedings. Although prisoners retain some due process rights, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). If a prison disciplinary hearing may result in the loss of earned release credits, an inmate must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

4

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). Due process further requires that "some evidence" must support a finding of guilt in a prison disciplinary hearing. *Id.* at 455. We do not decide the credibility of witnesses, weigh the evidence, or reexamine the full record, and instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

I.      Disciplinary Case Number 17-L23-1182

**¶11**        Cook argues that he was denied due process throughout the disciplinary proceedings for case number 17-L23-1182. Cook argues that he did not receive advance written notice of the disciplinary charges, and as a result, he was denied the opportunity to call witnesses and present evidence. He also claims he was not given equal access to the internal appeals process.

**¶12**        We note Cook also alleges that case number 17-L23-1182 was later dismissed.[3] If this case was in fact dismissed as Cook contends, Cook cannot demonstrate that he suffered any prejudice due to any deficiencies with DOC providing advance notice, his ability to call witnesses and present evidence at the hearing, or his access to the appeals process. "[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991); *cf. Cty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶ 12 (App. 2010) (stating that due process error is not reversible absent prejudice).

**¶13**        Cook further argues that this proceeding resulted in the loss of 120 earned release credits, and he argues the credits must be restored and information from this case must be deleted from Cook's institutional files due to the dismissal. Cook did not raise these arguments below. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (finding that

---

[3]      The superior court found that Cook failed to attach any documentation regarding case number 17-L23-1182, and so his claims regarding this proceeding were "wholly unsupported." On appeal and in his brief, Cook cites to a document he attaches in his appendix that he claims proves the disciplinary proceedings were dismissed. The document Cook cites to is a Result of Disciplinary Hearing for case number 17-L23-1182, in which Cook was found guilty of the charges. No other documentation for this disciplinary proceeding has been provided.

we generally do not consider issues raised for the first time on appeal); *see also Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503 (1987) (noting arguments raised for the first time on appeal, including constitutional challenges, may be waived). Regardless, Cook has not provided any evidence, nor does the record show, that any penalties assessed against Cook still stand after the alleged dismissal of the case. Additionally, the Appellees' inability to locate any documentation regarding this case number would seem to suggest that the case was deleted from Cook's institutional files.

¶14 Finally, Cook contends that although case number 17-L23-1182 was ultimately dismissed, the proceeding was still used to place him in maximum custody in violation of his due process rights. This argument was also not raised below. *See Englert*, 199 Ariz. at 26, ¶ 13; *Hawkins*, 152 Ariz. at 503. Cook's placement in maximum custody stems from his involvement in a riot, a completely independent set of events. The superior court did not err when it denied relief.

II. Disciplinary Case Number 17-LO9-0113

¶15 Cook argues he was not given the constitutionally required twenty-four hours advanced written notice of the January 5, 2018 hearing for case number 17-LO9-0113, which he alleges prevented him from collecting evidence and preparing a defense. *See Wolff*, 418 U.S. at 564. While Cook claims he was not made aware of the hearing and charges until sixty-one days after the hearing, Cook concedes he was given a disciplinary report and written notice on January 4, 2018. In fact, the records reveal on January 4, 2018, Cook made requests for witness statements in anticipation of the January 5, 2018 hearing.

¶16 The purpose of providing an inmate with a copy of the charges is "to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. Regardless of the exact amount of notice Cook was given, Cook was notified at least the day prior to the hearing, and he has failed to demonstrate how he may have been prejudiced by allegedly not receiving the full twenty-four hours' notice. *See Powell*, 953 F.2d at 750; *cf. Yakima Compost Co.*, 224 Ariz. at 598, ¶ 12.

¶17 Additionally, Cook claims he was prevented from calling witnesses at the hearing and presenting evidence, but he does not have an unrestricted right to do so. Allowing so would have the "obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff*, 418 U.S. at 566. Accordingly, "[p]rison officials

must have the necessary discretion . . . to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* DOC does not allow inmates to force corrections officers and staff to testify live at disciplinary hearings, and instead allows inmates to ask written questions of witnesses. Arizona Department of Corrections Department Order 803-7.9.1 and 7.9.2.

¶18 Aside from Cook's unsupported contentions, no evidence suggests he was denied the opportunity to solicit and utilize witness statements for this hearing. There is also no evidence to support Cook's contentions that he was denied the right to present any such witness statements.

¶19 Cook next makes various unsupported arguments that he was denied requests for documents from the hearing, he was placed in maximum custody for the sole purpose of preventing him from attending the hearing, and he was also denied "equal access" to an internal appeals process. Aside from his broad allegations, Cook again fails to develop any equal access claim or to provide any support for these arguments. As such, we decline to further address these arguments.

¶20 Finally, Cook argues that the charges against him cannot stand because the only evidence that supported the charges against him was the testimony of a correctional officer. Cook argues that documentary evidence, physical evidence, and video evidence should have been provided before he could be found guilty. This court does not reweigh the evidence. *See Hill*, 472 U.S. at 455. All that is required to uphold the decision of a disciplinary board is "some evidence"; the testimony of a correctional officer is sufficient. *Id.* The court did not err in denying Cook relief.

III. Disciplinary Case Number 18-LO9-0001

¶21 Cook again argues he was not given the constitutionally required twenty-four hours advanced written notice of this disciplinary hearing. *See Wolff*, 418 U.S. at 564. However, Cook was given sufficient advance notice, as he was notified of the charges on March 2, 2018, and the hearing was held on March 29, 2018.

¶22 Cook also argues that he was prevented from calling witnesses at the hearing and he was prevented from reviewing the evidence relied upon by the correction officers, particularly the library book he was accused of damaging.

¶23        Cook argues that DOC was required to allow him to call witnesses at the hearing, and if they did not, Cook must be given an explanation as to why he was denied the opportunity.  It is true that the Supreme Court has recommended that a hearing officer document the reason for excluding a witness, stating that "it would be useful for the [trier] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566.  However, as explained above, Cook does not have an unrestricted right to call witnesses.  *Id.*  DOC disciplinary regulations require inmates to make witness requests and propose questions for each in writing before the disciplinary hearing.  See Arizona Department of Corrections Department Order 803-7.9.1 and 7.9.2.  Nothing in the record indicates Cook ever attempted to request witnesses or propose questions, or that Appellees ignored such a request.  The Result of Disciplinary Hearing form for case number 18-LO9-0001 indicates no witness statements were used or denied, suggesting Cook did not attempt to use any.

¶24        Additionally, although Cook argues that he should have been confronted with the library book he was accused of damaging, due process does not require physical evidence to be presented at hearings; it is sufficient to find an inmate guilty based upon a correction officer's disciplinary report and/or testimony.  *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).  The court did not err in denying Cook relief.

IV.    Disciplinary Case Number 18-A21-0349

¶25        Cook argues that he was prevented from presenting evidence in the form of written witness statements for case number 18-A21-0349, and he claims he was prevented from presenting videotape evidence.  However, the record shows Cook did use three witness statements for the hearing.  DOC noted that two other witness statements were denied because the officers were not present at the hearing and unavailable.  Nothing in the record indicates Cook was denied the request to present any video evidence.  Cook was present at the hearing, and he had the opportunity to ask questions to three witnesses.  Cook has failed to prove that his due process rights were violated.

¶26        Cook also argues that this case was filed in retaliation due to his filing an inmate grievance and that he was denied a hearing in front of an impartial decisionmaker; however, Cook again fails to provide any evidence to support these contentions.  The mere fact that case number 18-A21-0349 was filed six days after Cook claims to have filed an inmate grievance does not prove that DOC only filed this case as a retaliatory

measure. Additionally, the Supreme Court has held that correctional officers and staff are sufficiently impartial to conduct disciplinary hearings. *See Wolff*, 418 U.S. at 570-71. The superior court did not abuse its discretion in denying relief.

V.      Disciplinary Case Number 18-A21-0364

**¶27**      Cook first argues that he was again prevented from presenting evidence that would have corroborated his defense and testimony at the hearing; however, the record shows that Cook used five witness statements. Only one witness statement was denied, and it was because the correction officer was unavailable and not present at the hearing. Cook also argues that he was prevented from obtaining videotape evidence of the incident. However, nothing in the record indicates Cook was denied the request to present any video evidence. Additionally, Cook was present at the hearing and five of his witness statements were used, which included statements of individuals physically present during the incident. On this record, it cannot be said that Cook's due process rights were violated.

**¶28**      Cook also argues the filing of this case was a "deliberate malicious use" of the disciplinary process by DOC in violation of his due process rights. Cook has failed to explain how DOC's filing of case number 18-A21-0364 was an abuse of process, and he provides no evidence to prove these allegations. The superior court did not abuse its discretion in denying relief.

VI.      Maximum Custody Proceedings

**¶29**      Cook argues he was not afforded due process throughout his maximum custody placement proceedings. First, it should be noted that a prisoner has no constitutional right to enjoy a particular security classification. *See Sandin v. Conner*, 515 U.S. 472, 485-86 (1995) (finding that disciplinary confinement of inmates "in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law" and so it does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *see also Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (holding there is no due process protected liberty interest in a prisoner's re-classification and transfer decision).

**¶30**      Nevertheless, contrary to Cook's claims, Cook was given advance written notice of the proceedings. The Notice of Hearing form was

signed by Cook on December 22, 2017, and the hearing was then held on January 5, 2018.

¶31 Additionally, Cook claims DOC "deliberately failed" to investigate his appeal, and he was denied "equal access" to an available appeals process. First, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Additionally, Cook had access to the available appeals process, and in his brief he included the appeal he filed. Cook provides no evidence other than his unsupported contentions that DOC failed to appropriately respond to his appeal, and he does not explain how he did not have "equal access" to the appeals process. The superior court did not err in its denial of special action relief.

**CONCLUSION**

¶32 For the foregoing reasons, we affirm.

