NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE DEPENDENCY AS TO A.G. and J.W.

No. 1 CA-JV 22-0276
FILED 5-30-2023

---

Appeal from the Superior Court in Maricopa County
No. JD41656
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Bailey Leo
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Michael J. Brown and Judge Michael S. Catlett joined.

---

**M c M U R D I E**, Judge:

¶1　　　　Mother appeals from the juvenile court's dependency adjudication. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Mother has two children, Abby and Jack.[1] Joshua G. is Abby's father. Mother and Joshua's "on and off" relationship has a history of domestic violence. In 2017, Mother reported to the police that Joshua pushed her while she was holding Abby, and he continued to abuse her while Abby was in the room.

¶3　　　　In 2018, a police investigation revealed that Joshua severely injured Mother.[2] Mother fled from Joshua, running through the street while holding Abby. Joshua was arrested, and Mother was treated at a hospital.

---

[1]　　　We use pseudonyms to protect the children's identities.

[2]　　　The police report summarized the incident as follows:

　　　Investigation revealed that [Joshua] engaged in a prolonged physical attack against the victim (V1), who was his live-in girlfriend at the listed location in apartment #159. [Joshua] began physically assaulting V1 at approximately 0230 hours, after going through her social media. While in the kitchen, [Joshua] used his closed fists to punch V1 multiple times on her face and body. [Joshua] then used a kitchen steak knife with an approximately 4-5 inch blade to cut and stab V1, who sustained a laceration to her left and right shoulder as well as a small puncture wound to her left arm.

¶4　　　　In 2019, the Department of Child Safety ("the Department") reported that Mother abused drugs around Abby. Mother denied the allegation and "refused to engage with [the Department]." The Department repeatedly tried to contact Mother after Jack's birth in 2020 but did not succeed.

¶5　　　　In March 2022, the Department received a report that Abby and Jack were left unsupervised in a hotel. Hotel staff searched Mother's hotel room, including the bathroom, and could not find anyone. Later, the police entered the hotel room and reported the room was "extremely dirty" with "dirt on the floor and bedding." The police noted "a strong odor of rotting food and smoke in the room," and cigarettes were "within reaching distance" of the children. The children were covered in dirt. Jack's diaper was covered in an "unknown black residue," and it appeared it had not been changed for a while. The police noted the hotel was in "a high crime and drug activity area," and the police observed "urine and feces in the hallways of the hotel from people defecating on the property."

¶6　　　　Mother denied leaving her children unsupervised and claimed she was in the shower. The police arrested Mother for child abuse, but the State declined to prosecute her. The Department could not locate Mother or her children after the incident. Mother and her children had moved to Tucson to live with Joshua.

¶7　　　　The Department filed a dependency petition, alleging that Mother was "unwilling or unable to provide proper and effective parental care and control by neglecting to provide a safe and stable home environment and proper supervision." The Department also alleged that Mother "neglect[ed] to provide proper and effective parental care and control due to domestic violence." Mother argued that the Department could not meet its evidentiary burden because she was never prosecuted for child abuse.

---

V1 left the kitchen and was followed into the bedroom by [Joshua where he] used handcuffs to restrain her to a lower clothes rod in the closet. While V1 was restrained, [Joshua] used a leather belt to strike her multiple times along her entire left side, causing welts and bruising. [Joshua] then used unknown means to heat metal tweezers which he then used to burn V1 on her legs.

¶8 In June 2022, Mother and her children stayed at a friend's house after a fight with Joshua. Joshua drove to the friend's house and shot his gun at the house multiple times while the children were inside. The Department removed Abby and Jack from Mother's care after the incident. The Department created a family reunification plan and referred Mother for domestic-violence counseling, parenting and family services, and visitation services.

¶9 The Department asked Mother to submit to drug testing to rule out substance abuse concerns, but as of the dependency hearing, she had not complied. The Department learned that Abby's weight was in the tenth percentile of her age group, and Abby needed her teeth removed due to tooth decay. Jack's doctor said Jack "seem[ed] generally healthy." But Jack's out-of-home placement thought Jack may have an intellectual disability, and daycare staff observed he was "developmentally off track."

¶10 The court held a dependency hearing in November 2022. Mother denied leaving her children unsupervised in March 2022 and claimed she was showering when the children were found in the hotel room. Mother testified she ended her relationship with Joshua in 2017 or 2018, but she co-parented with him. To her, co-parenting meant "being able to do family events . . . without any issues, and being able to provide for the kids equally." She would stay away from Joshua to ensure her children's safety and not contact him if he was "not in the right state of mind."

¶11 At the time of the dependency hearing, Joshua was incarcerated. Mother said she would seek an order of protection if he were released. Even so, the Department still had safety concerns because Mother had not participated in domestic violence counseling to make the necessary behavioral changes. Mother testified that to keep domestic violence out of her life, she would avoid relationships and focus on her children.

¶12 The case manager was also concerned about Mother's lack of employment and housing stability. Mother had reported she moved back to Phoenix after the shooting incident, but her address was unknown. At the hearing, Mother testified she now lived with her mother. She also stated she worked temporary jobs and was "waiting on [her] social to get hired on to another job."

¶13 The court found Abby and Jack dependent as to Mother because she could not provide a safe and stable home free from domestic violence. The court found that Mother tried to co-parent with Joshua despite severe domestic violence incidents. By doing so, Mother failed to

recognize Joshua as a "significant safety risk to herself or her children." And although Joshua was incarcerated, Mother did not understand "the impact that domestic violence has had on her and [the] children," and she was not aware "of the cycle of domestic violence and her role as a victim." These conditions kept her children at risk of harm. The court found that Mother could learn to enter healthy, safe relationships with her children through counseling.

¶14        The court also found Abby and Jack dependent as to Mother because she could not provide a safe and stable home free from neglect and insufficient supervision. The court did not find credible Mother's testimony that she was in the shower when the children were left alone in the hotel room in March 2022. The court noted that the children are "young and vulnerable," Jack "has special needs and requires additional supervision," and Abby "needed teeth removed due to dental neglect."

¶15        Finally, the court found that the Department made reasonable efforts to prevent the removal of Abby and Jack from Mother's care and that it would go against the children's welfare for Mother to care for them at that time. The court approved a case plan for family reunification and noted that "services are in place to prevent the continued removal of the children."

¶16        Mother appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A), and 12-2101(A)(1). *See also* Ariz. R.P. Juv. Ct. 601(b)(2)(A) (An order declaring a child dependent is a final order.).

## DISCUSSION

¶17        We review dependency findings for abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). We view the evidence in the light most favorable to sustaining the court's findings and "will not disturb a dependency adjudication unless no reasonable evidence supports it." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). We will not reweigh the evidence and defer to the juvenile court's credibility determinations and resolutions of disputed facts. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, 336, ¶¶ 4, 14 (App. 2004).

¶18        A child is dependent if the court finds the child is "[i]n need of proper and effective parental care and control and . . . has no parent or guardian willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i). "Effective parental care and control" includes protecting children from abuse. *In re Appeal in Pima County Juv. Action No.*

*J-77188*, 139 Ariz. 389, 392 (App. 1983); *see also Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 14 (App. 2016) ("A child may be dependent when the parent is unwilling or unable to protect the child from abuse."). A child is also dependent if the court finds his or her "home is unfit by reason of abuse, neglect, cruelty or depravity by a parent." A.R.S. § 8-201(15)(a)(iii). A child is "neglected" if the parent cannot provide the child with "supervision, food, clothing, shelter or medical care," and this inability "causes substantial risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

**¶19** The court must find the factual basis for the dependency by a preponderance of the evidence. A.R.S. § 8-844(C)(1). And the court must make dependency findings "based upon the circumstances existing at the time of the adjudication hearing." *Shella H.*, 239 Ariz. at 50, ¶ 12.

## A. Reasonable Evidence Supports the Court's Dependency Findings.

**¶20** First, Mother argues that the juvenile court erred by considering the domestic violence she suffered. She argues a parent should not be separated from his or her children only because the parent is a domestic violence victim. Mother raises this argument for the first time on appeal. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 25, ¶ 13 (App. 2000) ("[W]e generally do not consider issues, even constitutional issues, raised for the first time on appeal."). In any event, the court did not adjudicate the children dependent just because Mother is a victim of domestic violence. Rather, Joshua's abuse of Mother placed the children in significant danger. The court found that even after Joshua was incarcerated, Mother's inability to recognize the safety risks from her relationship continued to threaten the children. *See Shella H.*, 239 Ariz. at 51, ¶ 16 ("[D]omestic violence need not be continuous or actively occurring at the time of the adjudication hearing to support a finding of dependency on these grounds; the substantiated and unresolved threat is sufficient.").

**¶21** The children's presence and placement in harm's way during domestic violence, Mother's choice to co-parent with Joshua after abusive incidents, and Mother's failure to attend domestic violence counseling support the court's findings. *See Willie G.*, 211 Ariz. at 235, ¶ 21. Despite Mother's testimony that she would avoid relationships, the court was within its discretion to find that the children were still at risk of harm in Mother's care. *See Oscar O.*, 209 Ariz. at 336, ¶ 14 (We will not reweigh evidence on appeal.).

**¶22** Mother also challenges the court's neglect findings. She argues there is no evidence that the conditions in the hotel room caused any risk of harm to the children's welfare. The court found the children were left unsupervised, and we will not disturb the finding. *See Oscar O.*, 209 Ariz. at 334, ¶ 4. And with the children left unsupervised, the court could reasonably conclude that the documented conditions of the hotel room, such as dirt, feces, and cigarettes, placed the children at substantial risk of harm. *See* A.R.S. § 8-201(25)(a). Mother also argues the court erred by finding she neglected her children's medical care. But there was enough evidence to support the court's conclusion that Mother was not meeting her children's medical needs. *See Willie G.*, 211 Ariz. at 235, ¶ 21. The court did not abuse its discretion by finding that Abby and Jack were dependent as to Mother.

## B. The Department Did Not Violate Mother's Parental Rights.

**¶23** Mother argues that the court erred by allowing the Department to remove the children from her care because less restrictive alternatives were available. She asserts that the Department could have provided her services while the children remained in her custody.

**¶24** "The liberty of parents to direct the upbringing, education, health care and mental health of their children is a fundamental right." A.R.S. § 1-601(A). But a parent's right to the custody of his or her children is not absolute. *In re Appeal in Cochise County Juv. Action No. 5666-J*, 133 Ariz. 157, 161 (1982). The state can infringe on this right if it proves "that the compelling governmental interest as applied to the child involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means." A.R.S. § 1-601(B). The state has a compelling interest in protecting children's health and welfare. *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239, ¶ 12 (App. 2012).

**¶25** Mother cites no authority to support that the order for temporary out-of-home placement with visitation services deprives her of her fundamental right to parent. *See* ARCAP 13(a)(7)(A) (Appellant must provide "citations of legal authorities . . . on which the appellant relies."). We agree with Mother that the Department must make reasonable and diligent efforts to reunite the family before terminating her parental rights. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 22, ¶¶ 46–47 (App. 2019). But we are reviewing a dependency adjudication, and the court has not terminated Mother's parental rights. Mother fails to support her claim that the Department needed to provide services before the court could adjudicate the children dependent. Rather, the court must only *consider*

whether services were available to prevent the need for removal. A.R.S. § 8-844(B); *see* A.R.S. § 1-602(B) (The Parents' Bill of Rights does not prohibit courts from acting within the scope of their authority or issuing orders otherwise legally permitted.).

¶26 Throughout the dependency proceedings, the court assessed whether removing the children from Mother's custody was necessary and whether the Department made reasonable efforts to prevent the children's removal. The Department created a family reunification case plan and referred Mother for domestic violence counseling, parenting programs, family services, and visitation. The court expected that Mother's participation in counseling could alleviate some of the Department's domestic violence concerns. But Mother had not participated in counseling at the time of the hearing. Thus, the court adequately considered the availability of services and did not err by placing Abby and Jack in the Department's custody.

## CONCLUSION

¶27 We affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA