875 P.2d 131

**Leslie BRYAN and Diane Bryan, husband and wife, Petitioners,**

v.

**The Honorable Marilyn A. RIDDEL, a judge thereof, Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

and

**STATE of Arizona, DEPARTMENT OF TRANSPORTATION (ADOT), an Agency of the State of Arizona, et al., Real Parties in Interest.**

No. CV–92–0412–PR.

Supreme Court of Arizona.

May 31, 1994.

---

Law Offices of Charles A. Shaw by Charles A. Shaw, Prescott, for petitioners.

Ronald A. Lebowitz, P.C. by Ronald A. Lebowitz and Barbara M. Behun, Phoenix, for real parties in interest.

## OPINION

ZLAKET, Justice.

### I. BACKGROUND

The parties have framed this matter as a straightforward discovery dispute under recently enacted Rule 26.1 of the Arizona Rules of Civil Procedure. Our review of the record, however, reveals that the case has as much if not more to do with the type of contentious conduct that first prompted this court to adopt the 1992 amendments to Arizona's civil discovery rules. It is an unfortunate tale of attorneys locked in a bitter struggle and exhibiting little in the way of cooperation or civility, at considerable expense to their clients and the justice system.

At issue here is the propriety of an August 26, 1992 order precluding plaintiffs from using at trial any expert witness and at least five non-expert witnesses because of counsel's failure to properly disclose relevant information. To understand the present posture of the case, we must go back to December 5, 1991, when plaintiffs filed their amended complaint. Leslie Bryan and his wife sued the Arizona Department of Transportation, alleging that he was wrongfully terminated in retaliation for "whistle blowing" related to sexual harassment, contractor fraud and chemical spillage. The attorney general answered for defendants on January 3, 1992. During the following five and one-half months, the defense did essentially no discovery. On or about April 17, plaintiffs filed their list of witnesses and exhibits pursuant to Rule V(a), Super.Ct.Unif.R.Practice. De-

fendants did likewise on May 11. Plaintiffs filed a motion to set and certificate of readiness on May 13, and two weeks later, the court assigned a trial date of September 8, 1992. The discovery cutoff date was July 12.

On June 17, plaintiffs moved to add another medical witness and additional exhibits. The motion was granted without objection. On June 19, plaintiffs' counsel deposed a witness in Kentucky. Defendants were represented at the deposition by an assistant attorney general. The deposition was videotaped for the express purpose of "possible showing to the jury," and the written transcript of the proceeding ended up being 172 pages in length. Yet, this is one of the witnesses whose testimony was later precluded by the court for nondisclosure of "subject matter."

On June 25, long after the time allowed by Rule V(c), Super.Ct.Unif.R.Practice,[1] the defense filed and served a pleading purporting to controvert the motion to set and certificate of readiness. This was filed by an attorney new to the case who, along with his formal notice of association, served written interrogatories on plaintiffs. These interrogatories constituted the first real effort at discovery by the defense. Despite plaintiffs' opposition and the absence of any real explanation for defendants' failure to have conducted prior discovery, the trial court on July 7 extended the cutoff date to August 24, 1992, just 15 days before trial. Meanwhile, the amendments to the rules of civil procedure became effective on July 1. The parties did not stipulate out of their application, an option reserved for cases pending on that date. *See* "Effective Dates and Exceptions" in Arizona Supreme Court, Amendments to: Arizona Rules of Civil Procedure (1992), *reprinted in* 25 Ariz.St.L.J. app. at 291 (1993).

There ensued a flood of activity, much of which would likely not garner praise for the legal profession. Numerous depositions were taken during which both attorneys acted inappropriately. There were instances of bickering, witness coaching, unnecessary and improper objections, "sabre rattling," and rude remarks. In August, after first having warned both attorneys to refrain from such activity, the trial judge assessed partial deposition costs against plaintiffs' counsel as a sanction for obstructionist conduct. Although defense counsel was not sanctioned, the record before us reflects that he engaged in similar behavior on more than one occasion.

That same month, the defense objected when plaintiffs sought a court order permitting the depositions of approximately one dozen present and former ADOT employees. Defendants argued that presumptive limits in the recent amendments to the rules precluded such discovery unless plaintiffs could show they had no other means of obtaining the desired information.[2] *See* Rule 30(a), Ariz. R.Civ.P. The court agreed, indicating that plaintiffs should first make some effort to interview the witnesses. When plaintiffs' counsel later tried to do so, however, the defense lawyer advised him by letter that the witnesses would not consent to be interviewed. Plaintiffs thereupon renewed their motion to take the depositions, which was again opposed by the defense and inexplicably denied by the court.

The record contains further evidence of counsels' ongoing refusal or inability to get along with one another. There were charges and countercharges regarding the alleged insufficiency of answers to interrogatories and the failure to make other discovery. Hostilities escalated when counsel exchanged disclosure statements. On August 13, plaintiffs filed and served a five-page disclosure statement pursuant to Rule 26.1, Ariz.R.Civ.P. In sharp contrast, defense counsel responded with a 73–page, single-spaced disclosure statement on August 17, the last possible day for compliance in cases pending when the rules amendments took effect. *See* "Effec-

---

1. The rule provides:

 Within ten days after a Motion to Set and Certificate of Readiness has been filed: (1) Counsel for any other party may file a Controverting Certificate which specifies the particular statements contained in the Certificate of Readiness to which objection is made, and the reasons therefor.

2. This occurred despite the fact that plaintiffs' counsel had apparently permitted the defense to depose a number of non-expert witnesses without objection.

tive Dates," *supra.* It listed and described the anticipated testimony of approximately 18 present and former employees of ADOT, including those whom plaintiffs had previously been prevented from interviewing and deposing. In addition, it named and described 23 other potential lay witnesses and four experts. The document listed 94 exhibits.

In what appears to have been intended as a mere formality, defense counsel wrote to plaintiffs' attorney on August 18, complaining about the inadequacy of his disclosure statement. Three days later, on Friday, August 21, he filed a motion for sanctions. A copy was delivered to plaintiffs' counsel on Saturday, August 22, during the deposition of a defense expert. Remarkably, a hearing on the motion was conducted by the trial court the following Monday, August 24, giving plaintiffs little opportunity to prepare and file a meaningful response to the motion, or to the written supplemental memorandum filed by the defense *on the day of the hearing.* Plaintiffs' counsel had presented the defense with a more detailed 21–page amended disclosure statement on August 22, but in his supplemental memorandum, defense counsel claimed that this amendment added nothing of substance to the original statement.

At oral argument on the motion, plaintiffs' counsel requested an opportunity to prepare a written response. His request was denied. Nonetheless, on August 25, he filed a pleading in which he prayed for an extension of time to do whatever was necessary to satisfy the trial court's interpretation of sufficient compliance under the "new" rules. On August 26, having taken the matter under advisement, the court ruled as follows:

> For failure to disclose the substance of the *facts* and *opinions* to which the expert is expected to testify and for failure to give a summary of the *grounds* for each opinion, none of the expert witnesses listed by

plaintiff may testify.... For failure to designate the subject matter on which the following witnesses will testify, they may not testify: [listing five of plaintiffs' lay witnesses].[3]

One of the witnesses whose testimony was totally precluded by this order was plaintiff Leslie Bryan, despite the fact that he had been extensively deposed by the defense.

Plaintiffs filed a special action in the court of appeals contesting the trial judge's order. Plaintiffs' counsel argued his good faith belief that he had substantially complied with the rules in view of the extensive exchange of information and discovery that preceded his disclosure. He also avowed that because of the newness of the rules amendments, he and other members of the bar were in a quandary about the amount of detailed information required to be in a disclosure statement, especially in pending cases where there had already been substantial discovery. In support of this, he submitted examples of disclosure statements filed by attorneys in other recent actions. The court of appeals declined jurisdiction. We accepted review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3).

## II. DISCUSSION

We agree with the trial judge that plaintiffs' disclosure statement was inadequate under Rule 26.1. It summarily referred to the complaint for the factual and legal bases of plaintiffs' claims. It also attempted to simply incorporate prior answers to interrogatories with respect to the subject matter of anticipated testimony. As to four of the five lay witnesses who were subsequently excluded, those interrogatory answers stated only that their testimony would encompass "all matters referred to in deposition" or "all matters in the complaint of which [the witness] has knowledge."[4] Disclosures such as these do not comply with the

---

3. Although the order focused on the disclosure statement, the judge also apparently took into account the insufficiency of plaintiffs' interrogatory answers in determining that there had been noncompliance. *See* Minute Entry Order of August 26, 1992. The order also severely limited the testimony of several additional lay witnesses who were not completely excluded.

4. Disclosure with respect to the experts, on the other hand, was a bit better. Although the statement again referred to a prior interrogatory answer, that answer did set forth the subject matter of each expert's anticipated testimony.

rules.[5] Thus, the trial court legitimately looked to Rule 26.1(c), Ariz.R.Civ.P., for guidance. That rule provides:

> In addition to any other sanction the court may impose, the court shall exclude at trial any evidence offered by a party that was not timely disclosed as required by this rule, except by leave of court for good cause shown, and no party shall be permitted to examine that party's witness to prove facts other than those identified in the written disclosure to the party's opponents except by leave of court for good cause shown.

It is the trial judge's application of the rule with which we disagree. The purpose of the mandatory exclusionary sanction is to put "teeth" into the disclosure requirements of Rule 26.1(a). The intent is to deter litigants and their counsel from withholding relevant information by precluding its later use at trial. *See* State Bar Committee Comments to Rule 26.1(a), Ariz.R.Civ.P. This sanction was never designed or intended, however, to be just another weapon in the arsenal of those who delight in gamesmanship and like to call it "advocacy."

■ Under the rule, relief is available upon a showing of good cause. In our opinion, plaintiffs have made such a showing. The rules amendments had been in effect for just over a month when these parties were required to submit their disclosure statements. It is indisputable that most Arizona lawyers and judges were struggling with what admittedly represented a significant change in the way relevant information was to be exchanged by litigants. This is clearly evidenced by the lack of uniformity and consistency in disclosure statements that were filed during that time. Virtually no one in the country had any significant experience with disclosure. As plaintiffs' counsel correctly asserts, there had not yet been any opportunity for legal interpretation, and pre-

cious little guidance was available from other sources. It is therefore understandable that despite massive continuing legal education efforts, and a period of experimentation with the rules amendments, there was still an abundance of confusion and uncertainty.

Moreover, this trial was just a few weeks away. Despite his significant contribution to the overall lack of cooperation that accompanied this litigation and his inadequate formal disclosures, plaintiffs' counsel is correct in claiming that the relevant information here had in fact been discovered and was known by both parties. Thus, it was not unrealistic for him to believe that because the defense was well aware of the evidence that would be forthcoming at trial, nothing more than what he filed was reasonably required or necessary.

As previously indicated, Rule 26.1(c) operates to exclude undisclosed evidence. But here, of the eight expert witnesses excluded by the trial court, the testimony of seven had already been described in prior interrogatory answers. The identity of four of the seven, along with the general subject matter of their testimony, had been disclosed in other pleadings. The eighth was identified, again with a statement regarding the subject matter of his testimony, in a letter updating interrogatory answers prior to the filing of the disclosure statement. While we agree that the answers to interrogatories were not as complete as they could or should have been, it would be a mistake to conclude that the defense was kept in the dark with respect to the "evidence" in the case.

In assessing plaintiffs' claim of substantial compliance, the trial court also apparently failed to take into account the significant amount of information disclosed through deposition testimony. Defendants had deposed five of the eight excluded experts and had

---

5. We must note, however, that neither do the recent amendments to the rules require detailed "scripting" of expected testimony in the manner suggested by defendants' disclosure statement. The amendments were designed to reduce litigation costs by eliminating the need for copious formal discovery. They were not intended to substitute an expensive new procedure for older ones. Common sense is necessary in fashioning disclosures and assessing their sufficiency. Certainly, the substance of witness testimony must be fairly described, but any suggestion that every detail must be included should be rejected. The object of disclosure, as with all discovery, is to permit the opponent a reasonable opportunity to prepare for trial or settlement—nothing more, nothing less.

received a report from one other. Four of the five excluded lay witnesses had also been deposed, including plaintiff Leslie Bryan, who was examined by defense counsel for six and a half hours. Thus, except for perhaps one lay witness, all of the precluded witnesses, together with the subject matter of their testimony, had been disclosed to the defense in one way or another.

■ We have said that what constitutes "good cause" in matters of discovery depends upon the "particular circumstances of each case" and "considerations of practical convenience;" therefore, the trial court must necessarily be vested with some measure of discretion. *State Farm Ins. Co. v. Roberts,* 97 Ariz. 169, 174, 398 P.2d 671, 674 (1965); *see also Watts v. Superior Ct.,* 87 Ariz. 1, 3–4, 347 P.2d 565, 566–67 (1959). In our judgment, that discretion was abused here.

The facts of this case are distinct from those in *Jones v. Buchanan,* 177 Ariz. 410, 868 P.2d 993 (1993), where the rule changes occurred just after the suit was *initiated,* and no disclosure statement was ever filed by plaintiffs. Additionally, the plaintiffs in *Buchanan* failed to disclose the *identity* of two new witnesses until less than two weeks before the trial date and even then did so only by an "amendment" to previously submitted, inadequate and untimely interrogatory answers.

■ The disclosure rules must be interpreted in harmony with their underlying philosophy and purpose. Presumptive limits now apply to traditional discovery methods. Ordinarily, therefore, the disclosure statement is the primary vehicle by which the parties are informed of their opponent's case. Thus, it should fairly expose the facts and issues to be litigated, as well as the witnesses and exhibits to be relied upon. Here, however, the disclosure statement was not so critical, as discovery was essentially complete. At most, the judge should have applied Rule 26.1(c) to limit the scope of testimony to that expressed in depositions, interrogatory answers and other documents. The elimination of virtually all of plaintiffs' key witnesses at such a late stage in the proceedings was unnecessarily punitive *under these circumstances.*

Finally, we have difficulty taking seriously defense counsel's claims of "litigation by ambush." The length and breadth of his disclosure statement clearly demonstrates that he knew what this case was about and was quite adequately prepared for trial. Thus, defendants cannot legitimately claim to have been victimized.

## III. CONCLUSION

Disclosure, like all discovery, is not a game. It should have as its goal the preparation of cases for trial or settlement. Neither the "new" rules nor the "old" were intended to be used as swords by overzealous litigators. Because the amended rules attempt to change a culture of advocacy in which "hiding the pea" has too frequently been the objective, courts must not tolerate their abuse. In construing them, however, care must be taken not to elevate form over substance. Like all rules, their interpretation and application will require common sense and cooperation.

The situation here called for something less than the effective dismissal of plaintiffs' case. We therefore hold that the sanction imposed was an abuse of discretion *on these facts.* We reverse the trial court's order and remand the matter for further proceedings consistent with this opinion. We also deny defendants' motion to strike the petition for review, and both sides' requests for attorneys' fees.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.