NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ARMED FORCES BANK, N.A., *Plaintiff/Appellee*,

*v.*

ILANA H. NAMVAR, an individual, *Defendant/Appellant*.

No. 1 CA-CV 13-0664
FILED 12-30-14

---

Appeal from the Superior Court in Maricopa County
CV2008-029339
The Honorable Hon. David K. Udall, Judge

**AFFIRMED**

---

COUNSEL

Bryan Cave LLP, Phoenix
By Sean K. McElenney, Kyle S. Hirsch, and Daniel P. Crane
*Counsel for Plaintiff/Appellant*

Ilana H. Namvar, Phoenix
*Defendant/Appellant*

---

**MEMORANDUM DECISION**

---

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

¶1        Ilana Namvar ("Mrs. Namvar") appeals from the trial court's judgment entered against her, jointly and severally with Kohnam 26, L.L.C. ("Kohnam"),[1] and in favor of Armed Forces Bank, N.A. ("Armed Forces"). For the reasons stated below, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        On or about August 30, 2005, the predecessor-by-merger of Armed Forces, Bank Midwest, N.A. ("Midwest"), made a loan to Kohnam in the amount of $20,810,000 for the purpose of purchasing real property in Queen Creek, Arizona.[2]   Midwest declined to make the loan absent execution of guarantees by Mrs. Namvar and her husband, Ezri Namvar ("Mr. Namvar").   Mr. and Mrs. Namvar (collectively the "Namvars") signed as guarantors of the loan.

¶3        In the fall of 2008, Kohnam defaulted on the loan.  In October 2008, counsel for Midwest sent a letter to Kohnam, copying the Namvars, demanding immediate payment of all amounts due under the loan documents.  In November 2008, counsel for Midwest sent a letter to the Namvars, as guarantors of the loan, demanding immediate payment of all amounts due and owed by Kohnam to Midwest.

¶4        Midwest filed a complaint in the superior court of Maricopa County in November 2008, alleging breach of contract by Kohnam, as borrower, and the Namvars, as guarantors.  In December 2008, Midwest also filed a verified application for provisional remedy with notice, supported by an affidavit of J. Scott Gauldin ("Gauldin").  The affidavit included details about the loan, the guaranty, and the default on the loan.

---

[1] Kohnam has not filed an appeal or brief in this matter.

[2] Ezri Namvar, Mrs. Namvar's husband, and Ted Kohan were both members of Kohnam, and made the initial application for the loan at Midwest.

Midwest served Kohnam and the Namvars with all of these documents shortly thereafter.

¶5        Because an involuntary Chapter 11 bankruptcy petition was pending against Mr. Namvar, the trial court entered a stay order as to Mr. Namvar and placed the case on the inactive calendar. The court subsequently dismissed the case, but allowed Midwest to refile. Midwest filed its amended complaint for breach of contract on November 13, 2009 against Mrs. Namvar and Kohnam. On May 7, 2010, Midwest filed a motion for summary judgment. The court denied the motion based on the existence of genuine issues of material fact as to whether Midwest violated Regulation B under the Equal Credit Opportunity Act ("Regulation B") by requiring Mrs. Namvar to sign the guaranty.

¶6        In October 2010, Midwest responded to Mrs. Namvar's interrogatories, requests for admission, and requests for production, and identified Gauldin as a person who had knowledge of information regarding the case. In October 2011, Armed Forces, having been substituted for Midwest, submitted its initial disclosure statement, identifying an Arizona Rule of Civil Procedure 30(b)(6) designee as a trial witness.

¶7        The parties filed a joint comprehensive pretrial conference memorandum on September 28, 2012. On October 2, 2012, the trial court ordered all non-expert depositions to be completed by January 1, 2013, giving the parties 91 days to complete such depositions.[3]

¶8        On February 4, 2013, almost a month after the deposition deadline had passed, the trial court held a telephonic status conference during which both parties' attorneys participated and agreed they would reschedule a settlement conference. However, neither attorney brought up issues of disclosure or discovery deadlines during this status conference. On March 19, 2013, the court held another status conference. During this status conference, Mrs. Namvar made an oral request that the deadline for non-expert depositions be extended, now that Mr. Namvar's conviction had been affirmed by the Ninth Circuit Court of Appeals and he would not be

---

[3] The trial court's deadline was 169 days after the filing of the motion to set and certificate of readiness and 95 days after the filing of the joint comprehensive pretrial conference memorandum.

able to testify in person.[4]  Her request came almost 120 days after the Ninth Circuit had affirmed Mr. Namvar's conviction and 78 days after the court-imposed January 1, 2013 deadline for completion of non-expert discovery. The trial court denied her request and set a trial date, reasoning that Mrs. Namvar had had the opportunity to take the deposition and had chosen not to take it based on the chance that Mr. Namvar's conviction would be overturned prior to the original deposition deadline.[5]

¶9        The week before trial, at the pretrial conference, Mrs. Namvar objected to Armed Forces' witness as proposed in the final joint pretrial statement.  Mrs. Namvar argued that the bank's sole witness, Gauldin, was never properly identified during disclosure, and that the disclosure statement provided by Armed Forces only listed the "Designated representative of Plaintiff" as a possible witness.  Further, Mrs. Namvar argued the disclosure statement failed to adequately summarize what the testimony of the designated representative of Armed Forces would be.  The trial court ruled that Armed Forces would be permitted to call Gauldin as a witness.  Because the parties had previously stipulated to many of the facts surrounding the loan and what the loan documents were, the court limited Gauldin's testimony to the Regulation B defense.  The court based its decision on its reasoning that the disclosure statement filed in 2011 gave adequate notice that someone from the bank would testify.

¶10        After a one-day trial, the trial court concluded that Mrs. Namvar did not have standing to bring a defense under Regulation B, because she failed to qualify as an "applicant."  Further, the court found that even if Mrs. Namvar had standing to bring a defense under Regulation B, Armed Forces proved that it had nondiscriminatory reasons for requiring Mrs. Namvar to execute the guaranty.  The court granted judgment to Armed Forces against Mrs. Namvar under the guaranty and entered

---

[4] Mr. Namvar was convicted of wire fraud on May 19, 2011 and sentenced to seven years in prison.  Mr. Namvar began serving his sentence on December 5, 2011, and his conviction was affirmed by the Ninth Circuit Court of Appeals on November 20, 2012, 43 days before the deposition deadline set by the trial court.

[5] The trial court also later denied Mrs. Namvar's motion to allow Mr. Namvar to testify telephonically, reasoning that Mrs. Namvar had had "ample" time to acquire his testimony, and that based on his felony conviction for fraud related offenses, it would not be appropriate to allow Mr. Namvar to appear telephonically.  Mrs. Namvar does not appeal from the order denying her request for Mr. Namvar to appear at trial telephonically.

judgment against her and Kohnam, jointly and severally, for the amount of $18,416,977.02 plus the attorneys' fees and costs incurred by Armed Forces.

¶11        Mrs. Namvar filed a timely appeal.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (Supp. 2013).

## DISCUSSION

¶12        On appeal, Mrs. Namvar argues the trial court erred in permitting Gauldin to testify, in not permitting her to take a late deposition of Mr. Namvar, and in holding that she lacked standing to assert a Regulation B defense.  As Armed Forces has pointed out, Mrs. Namvar has not appealed from the alternative holding of the trial court that even if Mrs. Namvar had such standing, Regulation B was not violated by Armed Forces in requiring her to guaranty the loan.  Mrs. Namvar's failure to challenge this issue on appeal "constitutes a waiver of the issue," *Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977).  As Mrs. Namvar concedes, her appeal on standing is moot unless we reverse the court's decisions on allowing Gauldin to testify and not allowing her to take a late deposition of her husband.  Because we affirm on both of the latter two issues, we do not address the Regulation B defense or her standing to assert it.

I.        Standard of Review

¶13        "A trial court has broad discretion in ruling on disclosure and discovery matters, and this court will not disturb that ruling absent an abuse of discretion."  *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14, 296 P.3d 100, 104 (App. 2013).  This is because trial judges are in a unique position and "better able . . . to decide if a disclosure [or discovery] violation has occurred in the context of a given case and the practical effect of" such a violation. *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9, 227 P.3d 481, 484 (App. 2010).  As such, "[w]e have encouraged trial courts to take firm, active roles in the application and enforcement of" rules pertaining to disclosure and discovery "that were specifically designed to curb discovery abuse, excessive cost, and delay." *Allstate Ins. Co. v. O'Toole*, 182 Ariz. 284, 287, 896 P.2d 254, 257 (1995).

II.        The trial court did not abuse its discretion in permitting Gauldin to testify.

¶14        Mrs. Namvar argues that Armed Forces failed to properly disclose Gauldin as a potential witness.  Specifically, Mrs. Namvar contends that because the disclosure statement Armed Forces submitted on October

14, 2011 only identified the "Designated representative of Plaintiff" as a potential trial witness, Armed Forces failed to identify any specific witness it intended to call at trial. Further, Mrs. Namvar maintains that Armed Forces' description of the expected testimony of the "Designated representative of Plaintiff" was generalized and failed to provide a fair description of the substance of the testimony expected. We disagree with her arguments.

¶15 Arizona Rule of Civil Procedure ("Rule") 26.1(a)(3) requires each party to disclose in writing "[t]he names, addresses, and telephone numbers of any witnesses whom the disclosing party expects to call at trial with a fair description of the substance of each witness' expected testimony." The purpose of Rule 26.1, and other pretrial disclosure rules, "is to allow the parties 'a reasonable opportunity to prepare for trial or settlement—nothing more, nothing less.'" *Allstate*, 182 Ariz. at 287, 896 P.2d at 257 (quoting *Bryan v. Riddel*, 178 Ariz. 472, 476 n.5, 875 P.2d 131, 135 n.5 (1994)). Given this purpose, the Arizona Supreme Court has stated that Rule 26.1 "should be interpreted to maximize the likelihood of a decision on the merits," not "to thwart that goal by encouraging litigants to lie in wait for their opponents to miss a deadline and then use that momentary transgression" to obtain a favorable outcome. *Id.* Further, this Court has held that "a party need only disclose the 'substance' of the witness's expected testimony, not the details." *Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, 426, ¶ 5, 79 P.3d 673, 675 (App. 2003) (citing Ariz. R. Civ. P. 26.1(a)(3)).

¶16 Armed Forces sufficiently identified Gauldin at least two times as a potential witness more than 18 months before the trial. In January 2009, Midwest filed an application for provisional remedy attaching an affidavit of Gauldin and containing details about the loan, the guaranty, and the default on the loan. In October 2010, Midwest also identified Gauldin as a person likely to have knowledge of the facts of the case when it submitted its responses to Mrs. Namvar's interrogatories, requests for admission, and requests for production. In October 2011, Armed Forces' disclosure statement identified its witness as the "Designated representative of Plaintiff" who would "testify regarding the Loan and the Loan Documents, administration of the Loan, the Defendants' breaches of their respective obligations with respect to the Loan, and damages."

¶17 Given this record, the trial court did not abuse its discretion in allowing Gauldin to testify. As in *Bryan v. Riddel*, 178 Ariz. at 476, 875 P.2d at 135, and given the purpose of Rule 26.1, "it would be a mistake to

conclude that [Mrs. Namvar] was kept in the dark with respect to the 'evidence' in the case," or to allow Mrs. Namvar to benefit from lying in wait.

**¶18**　　　　While the description of Gauldin's testimony was rather vague, the court limited the issue to the Regulation B defense and offered Mrs. Namvar an opportunity to interview or depose Gauldin the day before trial, but Mrs. Namvar refused.　When a court attempts to resolve a discovery or disclosure dispute, "a party may not simply decline [that resolution] in the hope that the court will substitute a more stringent sanction." *State v. Roque*, 213 Ariz. 193, 210, ¶ 51, 141 P.3d 368, 385 (2006). If Mrs. Namvar had accepted the opportunity to interview Gauldin, she could have requested a continuance of trial based on the interview and her need to prepare a rebuttal.　Mrs. Namvar's outright refusal of the court's attempt to resolve the dispute, however, means this Court "cannot now fully assess the prejudice [Mrs. Namvar] may ultimately have suffered." *Id.* at 211, ¶ 51, 141 P.3d at 386.　Therefore, we cannot conclude the trial court abused its discretion in allowing Gauldin to testify.[6]

III.　　The trial court did not abuse its discretion in refusing to extend the deposition deadline to allow Mrs. Namvar to depose Mr. Namvar.

**¶19**　　　　Mrs. Namvar argues that the trial court abused its discretion by refusing to extend the discovery deadline to allow her to depose Mr. Namvar.　She argues that because a trial date had not been set at the time of the request, no other extensions had been previously requested, and Mr. Namvar's identity and expected testimony had been adequately disclosed to Armed Forces, the court had no reason to refuse to grant an extension of the discovery deadline because such an extension would have been harmless.　Further, she contends that even in the event that her request to

---

[6] Additionally, the transcript from the pretrial conference is only partially included in our record as attachments to the briefs of the parties. Consequently, we are unable to review completely the factors the trial court may have considered in making its decision to allow Gauldin to testify.　"As to matters not in our record, we presume that the record before the trial court supported its decision." *Ashton-Blair v. Merrill*, 187 Ariz. 315, 317, 928 P.2d 1244, 1246 (App. 1996).　Therefore, given the parts of the transcript missing from our record, we presume the complete record supports the court's decision to permit Gauldin to testify at trial.

extend the discovery deadline is not considered harmless, she established good cause for her request under *Allstate*.[7] We find no error.

**¶20** Under either Arizona Rule of Civil Procedure 16(f) or 37(c)(1), a party that fails to abide by a court-imposed deadline or to timely disclose information may use such evidence at trial either if the failure was harmless or the party seeking to use the evidence can show good cause for their failure. The parties' briefs rely on Rule 37(c)(1). Rule 37(c)(1) states that "[a] party who fails to timely disclose information required by Rule 26.1 shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion, the information or witness not disclosed, except by leave of court for good cause shown." *See also* Rule 16(f) ("If a party or attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, shall, except upon a showing of good cause, make such orders with regard to such conduct as are just, including, among others, any of the orders provided in Rule 37(b)(2)(B), (C), or (D).").

**¶21** Therefore, "the [first] relevant question must be whether [late disclosure or discovery] is harmful to the opposing party or to the justice system." *Allstate*, 182 Ariz. at 288, 896 P.2d at 258. If the court finds a party's failure was not harmless, the trial court must then determine whether good cause for the failure has been established. *Marquez*, 231 Ariz. at 443, ¶ 23, 296 P.3d at 106. In making this determination, a court should consider factors such as: "(1) the reason for the failure to properly disclose evidence; (2) the willfulness or inadvertence of a party's (or attorney's) conduct; (3) prejudice to either side that may result from excluding or allowing the evidence; (4) the opposing party's (or attorney's) action or inaction in attempting to resolve the dispute short of exclusion; and (5) the overall diligence with which a case has been prosecuted." *Id.* (citing *Allstate*, 182 Ariz. at 288, 896 P.2d at 258).

**¶22** In this case, the delay by Mrs. Namvar in obtaining the deposition of Mr. Namvar was "both substantial and inexcusable under the circumstances," demonstrating a "complete indifference to [her] responsibilities to the opposing party and the justice system." *Id.* The Ninth Circuit Court of Appeals affirmed Mr. Namvar's conviction on

---

[7] Mrs. Namvar also argues that the trial court's refusal to extend the discovery deadline to allow Mr. Namvar to be deposed is inexplicable when considered alongside the court's decision to permit Gauldin to testify. These two issues were considered by the court separately and are unrelated, so we find this argument has no merit.

November 20, 2012. Therefore, Mrs. Namvar knew a deposition of Mr. Namvar would be necessary 42 days prior to the deposition deadline set by the trial court in its October 2, 2012 scheduling order. There was sufficient time for Mrs. Namvar to complete that deposition before the January 1, 2013 deadline.

¶23 Further, despite having opportunities to, Mrs. Namvar made no attempt to request an extension of the deposition deadline prior to the status conference on March 19, 2013, almost 78 days after the deadline and almost 120 days after she knew of the Ninth Circuit's decision. The parties had been in contact with each other and the court regarding a stipulation to extend the settlement conference deadline in early 2013. During the telephonic status conference on February 4, 2013, Mrs. Namvar, again, made no mention of the possibility of extending the deposition deadline. Given that Mrs. Namvar had sufficient time to obtain a deposition of her husband, even after the Ninth Circuit Court of Appeals affirmed his conviction, and that she requested an extension of the deposition deadline over two months after its expiration, despite having earlier opportunities to make such a request, we cannot find that the trial court abused its discretion in finding that granting an extension of the deadline would neither be fair nor, in essence, harmless.[8]

¶24 Nor has Mrs. Namvar shown that the court erred in not finding she had good cause to take the late deposition. First, at the time of her oral request for an extension before the trial court, Mrs. Namvar's sole explanation for her failure to depose Mr. Namvar prior to the deposition deadline was that she believed Mr. Namvar's conviction would be overturned, which would have allowed him to appear at trial. On appeal, however, Mrs. Namvar claims that the primary reasons for her failure to comply with the deposition deadline were that the focus of both parties' efforts had been on settlement and that she believed her incarcerated husband's conviction would be overturned. Because Mrs. Namvar did not argue to the trial court that she failed to comply with the deposition deadline because the focus of both parties' efforts had been on settlement, we will not consider it now. *See Schoenfelder v. Ariz. Bank*, 165 Ariz. 79, 88, 796 P.2d 881, 890 (1990) ("As a general rule, we will not review an issue on

---

[8] Although the trial court did not specifically make a finding regarding harmlessness, "we may infer additional findings of fact and conclusions of law sufficient to sustain the trial court's order as long as those findings are reasonably supported by the evidence, and not in conflict with any express findings." *Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 11, 967 P.2d 1022, 1025 (App. 1998).

appeal that was not argued or factually established in the trial court.").  As to her explanation given before the trial court, although Mrs. Namvar might have honestly believed her husband's conviction would be overturned, she knew as of November 20, 2012 that it would not be, giving her 42 days to depose Mr. Namvar prior to the deposition deadline.

¶25        Second, although Mrs. Namvar's failure to depose Mr. Namvar might not have been a result of willful conduct, it is certainly not the result of mere inadvertence.  As previously discussed, Mrs. Namvar had adequate time to depose her husband prior to the deposition deadline, which she had sufficient notice of.  Further, her counsel waited over two months after the deadline had lapsed to request an extension to acquire the "essential" testimony of Mr. Namvar.  We do not consider such conduct to be mere inadvertence.  Conversely, such inaction may very well may rise to the level of willful conduct.

¶26        Third, Armed Forces had no obligation to repeatedly prod Mrs. Namvar's attorneys to comply with the deposition deadline.  There is no evidence in the record that Mrs. Namvar ever requested a stipulation from Armed Forces regarding the deposition deadline or that Armed Forces had any idea that Mrs. Namvar would be requesting an extension of the deposition deadline until the March 19, 2013 status conference.

¶27        Fourth, Mrs. Namvar readily admits that the case was not diligently litigated from its onset.  Although this fact alone may not warrant the exclusion of a key witness, this Court has previously determined that "[g]ood cause for untimely disclosure [or discovery] is not established when it is solely the result of a failure to engage in timely trial preparation." *Marquez*, 231 Ariz. at 444, ¶ 24, 296 P.3d at 107 (internal quotation marks and citation omitted).  Mrs. Namvar inexcusably failed to depose Mr. Namvar in a timely fashion.

¶28        Finally, even if Mrs. Namvar arguably showed good cause for the extension, she has not shown how the denial of that request prejudiced her.  Although Mrs. Namvar alleged that Mr. Namvar's testimony was "essential," she failed to make any offer of proof, before the trial court or on appeal, as to what Mr. Namvar's testimony would have been in order to demonstrate any prejudice by a refusal to extend the deposition deadline.  Accordingly, even if the superior court erred in not extending the deposition deadline for Mrs. Namvar to depose Mr. Namvar, such putative error was not prejudicial.  *See* Ariz. R. Evid. 103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party

informs the court of its substance by an offer of proof . . . ."); *see also State v. Gulbrandson*, 184 Ariz. 46, 59, 906 P.2d 579, 592 (1995) (refusing to reach the issue of whether the trial court abused its discretion by excluding testimony because defendant failed to properly preserve the issue by making an offer of proof).

**¶29**        Given these circumstances, the trial court did not abuse its discretion in refusing to extend the deposition deadline and Mrs. Namvar has not shown reversible error.

IV.     Attorneys' Fees

**¶30**        Armed Forces requests attorneys' fees on appeal. Section 16 of the guaranty provides for an award of attorneys' fees. "A contractual provision for attorneys' fees will be enforced according to its terms." *Data Sales Co., Inc. v. Diamond Z Mfg.*, 205 Ariz. 594, 601, ¶ 33, 74 P.3d 268, 275 (App. 2003). As we are affirming the judgment in all respects, we grant Armed Forces' request and, upon compliance with Arizona Rule of Civil Appellate Procedure 21, award Armed Forces its reasonable attorneys' fees and costs on appeal.

**CONCLUSION**

**¶31**        For the foregoing reasons, we affirm the trial court's judgment entered against Mrs. Namvar, in favor of Armed Forces.



Ruth A. Willingham · Clerk of the Court
F I L E D : jt

11