NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

BRETT BRIMLEY, et al., *Appellants/Cross-Appellees*,

*v.*

CHARLES JIRAUCH, et al., *Appellees/Cross-Appellants*.

No. 1 CA-CV 17-0597
FILED 12-27-18

---

Appeal from the Superior Court in Maricopa County
No. CV2015-011728
The Honorable Roger E. Brodman, Judge

**AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS**

---

COUNSEL

Fennemore Craig P.C.,[1] Phoenix
By Patrick Irvine, J. Christopher Gooch
*Counsel for Appellants/Cross-Appellees*

Schneider & Onofry PC, Phoenix
By Charles D. Onofry, Luane Rosen
*Counsel for Appellees/Cross-Appellants*

---

[1]     The law firm of Fennemore Craig P.C., by Patrick Irvine and J. Christopher Gooch, is hereby substituted as attorneys of record for ASU Alumni Group, by Thomas K. Irvine

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

**C A M P B E L L**, Judge:

**¶1**        In this breach of contract action, Brett Brimley appeals from the final judgment entered, following summary judgment granted in favor of Charles and Dana Jirauch and a subsequent bench trial on damages.[2] The Jirauches cross-appeal from the judgment, the denial of their motion for a new trial and amended and/or additional findings. For the following reasons, we remand with instructions to award the Jirauches litigation-related nontaxable costs, but we affirm in all other respects.

## BACKGROUND

**¶2**        In June 2015, Brimley offered $2.2 million to buy the Jirauches' home. Brimley submitted his offer on a standard Arizona residential real estate purchase contract that provided the buyer could (1) conduct due diligence during a 20-day inspection period (paragraph 6(a)), (2) deliver to the seller prior to expiration of the inspection period a signed notice listing "any items disapproved" (paragraph 6(i)), and (3) cancel prior to expiration of the inspection period for any disapproved items (paragraph 6(j)). Brimley also submitted a standard "as is" addendum, which essentially restated (at paragraph B) the buyer's rights to inspect pursuant to paragraph 6(a) and cancel under paragraph 6(j). In response, the Jirauches submitted a $2.25 million counteroffer, which provided (at lines 21-22) that "6j applies only to material defects in the property itself and not to defects in house or ramada." They also submitted addendum 1, which provided: "In AS IS Addendum . . . revise line 16 [of paragraph B] to read 'Buyer retains the rights pursuant to Section 6j only as to defects in the property itself and not in the house and ramada.'"

---

2        For ease of reference, we discuss "Brimley" in the singular, but our decision also applies to Michelle Brimley, who was a third-party defendant in the superior court and is an appellant/cross-appellee in this court.

¶3 Brimley accepted the counteroffer and deposited $100,000 in escrow. On the last day of the inspection period, Brimley cancelled the contract, stating: "Pursuant to lines 21/22 of Counter Offer #1 — the property does not suit the buyer's needs due to the inadequate water and sewer supply lines." The Jirauches understood that Brimley intended "to tear the house down, level the property and build one or two luxury homes on the lot." The Jirauches refused to release the earnest money, and litigation (among these parties and others) ensued. In June 2016, the Jirauches sold the property to Encanta Homes, Inc. for $2.15 million.

¶4 This appeal concerns the parties' competing breach of contract claims.[3] First, the issue of breach was litigated on cross-motions for summary judgment. After briefing and oral argument, the superior court granted summary judgment in the Jirauches' favor, concluding (1) there was no material defect in the property and (2) amended paragraph 6(j) "unambiguously eliminated" any right Brimley may have had to "cancel the sale because the property couldn't be split." Second, the issue of damages was litigated during a one-day bench trial. In the end, the court awarded the Jirauches $139,100 in direct damages, plus $14,596 in prejudgment interest, $45,000 in attorney fees, and $4,638 in costs. The court denied the Jirauches' post-trial motion on consequential damages, *see* Ariz. R. Civ. P. 59, and both parties appealed.

### DISCUSSION

### I.     Brimley's Appeal

### A.     Summary Judgment

¶5 Brimley challenges the summary judgment ruling, arguing that amended paragraph 6(j) did not restrict his right to cancel the contract because the water and sewer supply lines did not suit his needs.

¶6 On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the superior court properly applied the law. *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 104, ¶ 13 (App. 2017). We review de novo issues of contract interpretation, looking to the plain meaning of the words in the context of

---

[3]     *See, e.g.*, *Graham v. Asbury*, 112 Ariz. 184, 185 (1975) (noting that a party claiming breach of contract must prove the existence of a contract, breach, and damages).

the contract as a whole. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).

¶7            To begin, Brimley contends the water and sewer supply lines were appurtenant to "the property" as denoted in amended paragraph 6(j). *See Kengla v. Stewart*, 82 Ariz. 365, 372 (1957) (holding that water rights in a *private* water system were "appurtenant to the soil"). We need not decide this issue, however, because Brimley offered no evidence the lines were "defective" under the ordinary, common sense meaning of the word. *See Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 469, ¶ 17 (App. 2010) ("In construing a contract, we 'give words their ordinary, common sense meaning.'") (quoting *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 220 Ariz. 202, 209, ¶ 23 (App. 2008)). Nevertheless, Brimley contends that—because amended paragraph 6(j) did not otherwise constrain his right to inspect under paragraph 6(a) or deliver notice of "items disapproved" under paragraph 6(i)—a *defect in the property* must be interpreted as coextensive with *suitability of the property* for the buyer's intended use, so long as "unsuitability" did not arise out of the house or ramada. We disagree.

¶8            Regardless of whether Brimley's right to inspect remained unfettered, the totality of his right to cancel the contract is delineated in paragraph 6(j) as amended by the counteroffer and addendum 1. A plain and unambiguous contract provision must be applied as written. *Emp'rs Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267, ¶ 24 (2008). Brimley retained the right to inspect the property to serve his own interests, *cf. 1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202, ¶ 8 (2008) (stating the presumption that "private parties are best able to determine if particular contractual terms serve their interests"), but he relinquished the right to cancel for the universe of reasons outside the narrowly-circumscribed basis set forth in amended paragraph 6(j). To conclude otherwise would impermissibly expand the language the parties used beyond its plain and ordinary meaning. *See Emp'rs Mut. Cas. Co.*, 218 Ariz. at 267, ¶ 24. We are not at liberty to rewrite the contract to provide terms more favorable to either party than those they chose to include. *See Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 522 (1968).

### B.        Direct Damages: Disclosure

¶9            From the outset of the litigation, the Jirauches sought $450,000 in direct damages: the $2.25 million contract price minus $1.8 million, which the Jirauches claimed was the fair market value as shown by a subsequent

$1.8 million offer by Brimley for the property.[4] A few weeks prior to trial, however, Brimley challenged the admissibility of $1.8 million as a basis for fair market value on several grounds. After briefing and argument, the superior court found the probative value of an "unaccepted counteroffer" was significantly outweighed by the risk of unfair prejudice; thus, the court excluded the evidence under Arizona Rule of Evidence 403.

¶10            The question then became whether the Jirauches had presented *any* admissible evidence of direct damages. According to Brimley, the Jirauches had not done so because they did not timely disclose a computation of direct damages in which fair market value was measured on any other basis, including the "ultimate sale of the property." *See* Ariz. R. Civ. P. 26.1(a)(7). The superior court disagreed with Brimley, ruling that, because the Encanta sale itself had been timely disclosed, the $2.15 million sale price was "admissible evidence of what the property was worth at the time of the breach."

¶11            Brimley renewed his objection to this "new computation of damage" at trial, insisting that all of the Jirauches' disclosures prior to the deadline had computed damages "based on 2.25 million minus 1.8 million." The superior court reaffirmed its ruling:

> Well, we addressed this issue at the meeting that we had a couple of weeks ago. At that time, I overruled the objection. I found it was either timely disclosed or certainly disclosed with enough time that there was no prejudice arising out of it. I think it is common sense that if there is a breach of a real estate contract, that what -- the subsequent sale price is going to have some relevance as to what the damages are. So I overruled the objection then, and I'm overruling it now.

Following trial, the court further explained:

> *Perhaps the most difficult issue in this case involved disclosure.* Both sides accused the other of inadequate disclosure. *Brimley claimed that the Jirauches did not disclose damages.* The Jirauches accused Brimley of sandbagging. There is some merit to each side's argument. The Court allowed in evidence as best as it

---

4      Under Arizona law, the damages directly resulting from breach of a contract to buy real estate are measured by the contract price minus the fair market value of the property at the time of breach. *See* Rev. Ariz. Jury Instr. (Civil) Contract 21 (5th ed. 2015); *see id.* at 17, 18 cmt.

could in the interest of justice, *with the firm belief that the Jirauches' sale of the Property in 2016 was known to all, and Brimley's claim of prejudice resulting from that sale is willful ignorance.*

(Emphasis added.)

**¶12** Ultimately, the superior court concluded that "the Encanta contract is the best estimate of the fair market value at the time of the breach." Based thereon, the court awarded the Jirauches direct damages of $139,100: the contract price ($2.25 million) minus fair market value ($2.15 million) plus demolition and lot-split costs ($39,100).

**¶13** On appeal, Brimley argues the superior court erred by allowing the Jirauches to present evidence of the Encanta sale as a measure of fair market value. Again, we disagree.

**¶14** Arizona Rule of Civil Procedure 26.1(a)(7) requires a party to timely disclose "a computation and measure of each category of damages" and "the documents and testimony on which such computation and measure are based." But the purpose of any disclosure rule is to provide the parties "a reasonable opportunity to prepare for trial." *Bryan v. Riddel*, 178 Ariz. 472, 476 n.5 (1994). Thus, the key question is whether Brimley had a reasonable opportunity to defend against the Jirauches' theory of damages. *See SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 284, ¶¶ 46-50 (App. 2011) (vacating damages award because the plaintiff disclosed it was seeking "rent" and the value of the "right to use" but not "that it would claim $765 a month in damages"). He did. The Jirauches timely disclosed the method by which direct damages were calculated (contract price minus fair market value at the time of the breach). And the record simply belies Brimley's suggestion that he could not prepare a defense against $2.15 million because the Jirauches buried the Encanta sale in a "document dump." Importantly, the superior court advised the parties in October 2016 (seven months prior to trial) and again in March 2017 (three months prior to trial) that, in its opinion, the direct damages should be a "relatively simple calculation" of the difference between $2.25 million and "the actual sales price, plus interest and any incidental costs."

**¶15** The superior court is better able than we are "to decide if a disclosure violation has occurred in the context of a given case and the practical effect of any non-disclosure." *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9 (App. 2010). We review the court's ruling for an abuse of discretion. *Id.*

In doing so, we determine "whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013). Here, the court concluded that, rather than prepare a defense to a theory of direct damages that used $2.15 million as a basis of fair market value, Brimley willfully ignored the court's many indications of how damages would be calculated. On this record, we find no abuse of discretion.

### C.      Prejudgment Interest

**¶16**       Brimley challenges the award of prejudgment interest, arguing the Jirauches never timely disclosed a computation of direct damages totaling $139,100. To the extent this argument is not moot, *see supra* ¶¶ 13-15, we disagree. At trial, the Jirauches offered "a specific method of calculation and the requisite data" to enable Brimley to ascertain the exact amount owed. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa Cty.*, 208 Ariz. 532, 544,545, ¶¶ 39, 44 (App. 2004). Nothing more is required.

### D.      Attorney Fees and Costs

**¶17**       Brimley purports to challenge the superior court's award of attorney fees and costs, but the opening brief does not present a significant argument—supported by authority—setting forth his position on this issue. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient."). Thus, he has waived appellate review of the award.[5] *See Zubia v. Shapiro*, 243 Ariz. 412, 416, ¶ 25 n.1 (2018).

## II.     The Jirauches' Cross-Appeal

### A.      Consequential Damages

**¶18**       Following the bench trial on damages, the superior court determined the Jirauches failed to prove their consequential damages by a preponderance of the evidence. On appeal, the Jirauches challenge the superior court's failure to award them as consequential damages (1) at least two months of mortgage and tax payments, (2) Dana Jirauch's real estate agent referral fee, and (3) eight months of pool maintenance expenses.

---

[5]    In the reply brief, Brimley contends he would have been the prevailing party if the superior court had enforced Ariz. R. Civ. P. 26.1(a)(7). Because we find no error on this basis, *see supra* ¶¶ 13-15, we need not address this contention further.

**¶19** First, the court found "no persuasive evidence suggesting that the parties reasonably contemplated that an actively marketed home in the Arcadia neighborhood would take more than four months to sell." Second, the court found the Jirauches "consistently failed to disclose" the basis for "the costs they incurred that were above and beyond what they would have incurred if the Brimley contract had closed."

**¶20** In reviewing a judgment entered after a bench trial, we view the evidence in the light most favorable to upholding the decision. *Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, 506, ¶ 9 (App. 2005). A non-breaching party may recover consequential damages—*i.e.*, damages that "arise because of special circumstances"—by proving (1) it was foreseeable these damages would probably result if the contract was breached, (2) the damages were in fact caused by the breach, and (3) the amount of the damages. Rev. Ariz. Jury Instr. (Civil) Contract 18 (5th ed. 2015); *see Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 601 (1981). The amount of an award of damages is "peculiarly within the province of the trier of fact," and we will not disturb the award "except for the most cogent of reasons." *Fernandez v. United Acceptance Corp.*, 125 Ariz. 459, 462 (App. 1980). Similarly, we review the denial of a motion for new trial for an abuse of discretion. *State v. Fischer*, 242 Ariz. 44, 48, ¶ 10 (2017).

### 1. Mortgage and Tax Payments

#### a. September and October 2015

**¶21** As the superior court acknowledged, the contract permitted the Jirauches to rent the property from Brimley for $1.00 per month from August 31, 2015 until October 31, 2015, after the transaction had closed. The Jirauches agreed they would remain responsible for all utilities and landscaping during the term of the rental. The Jirauches argue their mortgage payment was $8,894.50 per month and request two months' mortgage payments—September and October 2015—and taxes less $1 per month, at a minimum, as their measure of damages resulting from the breach. But mortgage and tax payments on the property do not reflect its rental value: a property owner may obtain a mortgage based on financial circumstances that are unrelated to the value of the property, and fair market rental values are not determined by the existence of a mortgage on the property. The Jirauches agreed, post transfer, to a rental arrangement in which buyer would become their landlord. Therefore, the amount of damage suffered as a result of the breach would be the fair rental value of the home, less the $1 they agreed to pay, for the two months contemplated in the contract. The property tax payments would be paid by the landlord

and factored into the fair market rental value of the property. The Jirauches failed to present any evidence of the fair rental value of the home and thereby failed to offer proof of actual damages.

¶22 On appeal, the Jirauches argue this damage, the combined mortgage and tax payment, was both foreseeable and timely disclosed. Brimley suggests that we may affirm the superior court because while the Jirauches presented evidence of their mortgage payments, they presented no evidence of the property's fair market rental price, *see, e.g.*, *Peterson v. Newton*, 232 Ariz. 593, 595, ¶ 4 (App. 2013) (stating that an appellate court may affirm on any basis supported by the record). We agree. It is incumbent on the party claiming damage to provide the superior court with evidence about the amounts resulting from that damage. *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963); *Nelson v. Cail*, 120 Ariz. 64, 67 (App. 1978) ("[T]here must be a reasonable basis in the evidence for the trier of fact to fix compensation when a dollar loss is claimed.").

¶23 The Jirauches failed to prove the second element of a damage claim—namely the amount associated with the loss. When a party fails to submit proof of actual damages, as the Jirauches failed to do here, the superior court may decline to award damages. *Gilmore*, 95 Ariz. at 36; *Gary Outdoor Advert. Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 244 (1982).

> It is firmly established, of course, in this state as elsewhere, that 'certainty in amount' of damages is not essential to recovery when the *fact* of damage is proven. This is simply a recognition that doubts as to the extent of the injury should be resolved in favor of the innocent plaintiff and against the wrongdoer. But it cannot dispel [the] requirement that the plaintiff's evidence provide some basis for estimating his loss.

*Gilmore*, 95 Ariz. at 36 (citations omitted).

¶24 Accordingly, the court was justified in refusing to award damages on this claim.

### b. November 2015 to June 2016

¶25 According to the Jirauches, the superior court's order denying their mortgage-related expenses, including insurance and property taxes, from November 2015 through June 2016 is contrary to law and/or not supported by any, much less substantial, evidence.

¶26 First, the Jirauches contend the superior court erroneously placed the burden on them to prove the foreseeability of the *amount* of damage. We disagree that the court imposed such a burden; to the contrary, the court properly considered whether the *loss* (*i.e.*, post-October 2015 mortgage-related expenses) was foreseeable at the time of contracting. *See generally* Restatement (Second) of Contracts § 351 (1981) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made."). Second, the Jirauches challenge the sufficiency of the evidence to support a finding that *four* months (from June 2015 through October 2015) was a reasonably foreseeable length of time to sell the property at the price Brimley offered; instead, they argue that the evidence instead "adequately" supports *six to ten* months as the foreseeable length of time to sell the property. They concede, though, that they took the property off the market for "a short period of time" after the breach. We defer to the superior court's determination of witness credibility and weight to give the evidence, *see Armiros v. Rohr*, 243 Ariz. 600, 606, ¶ 21 (App. 2018), and the evidence supports the ruling.

### 2. Real Estate Agent Referral Fee

¶27 The Jirauches argue the superior court erred by sustaining Brimley's objection to the admission of evidence that Dana Jirauch would have received a $11,250 referral fee if escrow had closed. Specifically, they challenge the court's finding of untimely disclosure as "needlessly technical," explaining the lost referral fee was disclosed during Dana Jirauch's deposition—prior to the deadline. *See Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 361, ¶ 34 (App. 2014) (explaining that deposition testimony may be considered an amendment to prior disclosures). Again, the superior court has "broad discretion" in ruling on an issue involving disclosure. *Marquez*, 231 Ariz. at 441, ¶ 14. On appeal, we consider whether the decision was within the "bounds of reason." *Id.* Here it clearly falls within those bounds.

¶28 Further, even if it had been timely disclosed, Brimley was not a party to the agreement containing the referral fee and should not have been responsible for any alleged damages flowing therefrom. The Jirauches and a third-party broker completed a listing agreement for the property, which included a provision stating "[t]he Team will pay a Referral to Dana Jirauch who holds an Active Real Estate license in the State of Arizona." Brimley did not receive any benefit from and was not party to the arrangement between Dana Jirauch and the broker. Moreover, the real estate purchase contract does not mention Dana Jirauch's commission in

her capacity as a real estate agent, only as the seller, making the fee unforeseeable to Brimley. *See Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 567, ¶ 6 (App. 2002) ("For a person to recover . . . the contracting parties must intend to directly benefit that person and must indicate that intention in the contract itself."). Furthermore, there is no basis from which to conclude that a referral fee would only apply to the cancelled sale and not to a subsequent sale. Accordingly, we find no error.

### 3. Pool Maintenance

**¶29** The Jirauches argue the superior court erred by denying recovery of $800 in pool-related expenses incurred from September 2015 through June 2016, which the court previously found were both foreseeable and timely disclosed. Even had the transaction closed, the Jirauches agreed to continue paying for landscaping expenses—which necessarily would include pool maintenance—during the rental period. For this and the reasons discussed above, *supra* ¶ 26, we find no error.

### B. Costs

**¶30** The Jirauches requested an award of $7,778.14 in litigation-related costs pursuant to Arizona Revised Statutes ("A.R.S.") section 12-341 and paragraph 7(e) of the contract.[6] After finding the Jirauches were the prevailing party, the superior court granted taxable costs in the amount of $4,637.92 but denied nontaxable costs of $3,140.22 (*e.g.,* photocopies, postage, delivery service, and transcripts) as "not recoverable by law."

**¶31** On appeal, the Jirauches argue the superior court erred by limiting their recovery to taxable costs because *all* litigation-related costs, "without limitation," were recoverable under paragraph 7(e). Brimley responds that paragraph 7(e) did not remove the trial court's discretion, with little explanation. We consider the omission in Brimley's briefing to be a confession of error. *See In re 1996 Nissan Sentra*, 201 Ariz. 114, 117, ¶ 7 (App. 2001). To the extent Brimley argues we may affirm because the costs

---

6    Paragraph 7(e) provides, "[t]he prevailing party in any dispute or claim between Buyer and Seller arising out of or relating to this Contract shall be awarded their *reasonable* attorney fees and costs. *Costs shall include, without limitation, attorney fees, expert witness fees, fees paid to investigators, and arbitration costs.*" (Emphasis added.)

incurred were unreasonable, he waived this argument by failing to fully develop it. *See, e.g.*, *Zubia*, 243 Ariz. at 416, ¶ 25 n.1.

## CONCLUSION

**¶32**         For the foregoing reasons, we remand to the superior court with instructions to award the Jirauches $3,140.22 in nontaxable litigation costs. In all other respects, we affirm. We award reasonable attorney fees and costs to the Jirauches pursuant to paragraph 7(e) of the contract and A.R.S. § 12-341.01, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

